STATE OF NORTH CAROLINA v. JAMES LUTHER GALLOWAY

No. 72

(Filed 1 December 1981)

1. **Rape and Allied Offenses § 4.2— medical expert's testimony concerning examination of victim proper**

In a prosecution for first degree rape, there was nothing improper in a medical expert's testimony that an examination of the victim revealed evidence of traumatic and forcible penetration consistent with an alleged rape as it was a proper expression for an expert witness to establish whether the victim had been penetrated by force.

2. **Rape and Allied Offenses § 4.3- prosecuting witness's prior sexual activity — questions concerning — properly disallowed**

In a prosecution for first degree rape, the trial court did not err in refusing to allow defendant to ask the prosecuting witness: (1) "Are you or are you not a virgin?" and (2) "Are you or are you not on birth-control pills?" The questions were irrelevant to any issue in the case as (1) the medical expert did not imply that the prosecuting witness was a virgin, as defendant contended, and (2) the tendered questions did not fit within any of the exceptions listed under G.S. 8-58.6(b).

3. **Rape and Allied Offenses § 4— evidence of prosecuting witness's "night blindness" — properly admissible**

Evidence of the prosecuting witness's "night blindness" in a prosecution for first degree rape was clearly relevant to explain the witness's inability to give a clearer description of the circumstances surrounding the crime. Moreover, the testimony of the prosecuting witness and her friend was not improper despite their lack of medical expertise, and it was proper to allow a medical assistant technician to a doctor to testify that the doctor's opthalmological records disclosed that the prosecuting witness had an eye disease commonly known as "night blindness."

4. **Criminal Law § 89; Witnesses § 1.3— competency of deaf and mute witness**

Deaf and mute persons are not incompetent as witnesses merely because they are deaf and mute if they are able to communicate the facts by a method which their infirmity leaves available to them and are of sufficient mental capacity to observe the matters as to which they will testify and to appreciate the obligation of an oath. Any confusion arising from the use of sign language to communicate with a deaf and mute witness goes to the weight, and not the admissibility, of the evidence.

5. **Criminal Law § 102.5— evidence concerning testimony at preliminary hearing — impropriety cured by instructions**

In a trial for first degree rape, there was nothing to indicate that the State was making inquiry of witnesses as to what their testimony was at a preliminary hearing as defendant contended; however, if there had been any impropriety, it was cured by the trial court's correcting instructions.

6. **Criminal Law § 102.5— question concerning defendant's tatoo — improper — not prejudicial**

The trial court erred in a prosecution for first degree rape by allowing the district attorney to make inquiry concerning a tatoo of the word "sex" on defendant's arm; however, the error was not prejudicial as there was no reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial.

7. **Criminal Law § 102.5— pretrial agreement concerning defendant's record — no evidence of violation — questions proper**

Defendant was not entitled to a new trial for prosecution of first degree rape on the basis that the district attorney violated a pretrial agreement that no questions concerning his record would be asked where (1) the record tended

to support the view that the district attorney agreed only not to submit the written record before the jury and (2) a question concerning prior misconduct by defendant was asked to impeach defendant's character and was properly admitted.

Justice EXUM dissenting.

BEFORE *Mills, Judge,* at the 2 February 1981 Criminal Session of Superior Court, FORSYTH County. Judgment was entered 6 February 1981.

Defendant was convicted by a jury of first degree rape. He appeals his mandatory life sentence to this Court as a matter of right pursuant to G.S. 7A-27.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Thomas H. Davis, Jr., for the State.*

*L. G. Gordon, Jr., for the defendant.*

CARLTON, Justice.

I.

Only a brief summary of the evidence is necessary here for an understanding of the case giving rise to this appeal.

The prosecuting witness, Enola Kay Conrad, is a deaf mute and testified at trial through an interpreter. She told the jury that late on the night of 9 June 1980, she and two girlfriends, who were also deaf, and several males went out to dance and drink beer. They first went to Patterson's, and then left for Curt's Place. They arrived at Curt's at about midnight or one o'clock in the morning. At Curt's Place, she saw the defendant, James Luther Galloway. He bought her three beers and asked her to dance. They danced, and when they were through, defendant pulled her by the arm and led her outside. Conrad resisted by pulling back and asked defendant, "Where are we going?" by signing. Defendant said nothing and pulled her out the door, which was about three feet from where they had stopped dancing. He forced her into a car and got in beside her. Defendant continued to hold her arm while they were in the car. He drove to a house several blocks away. He got out of the car and then pulled Conrad out by her arm. He pushed her up the steps, through the door and into a bedroom. He told her to remove her clothes and

when she refused, he pulled them off. She screamed, and he covered her mouth and tried to choke her. He hit her on the face and then bit her face. Defendant had a knife and cut her on the neck, arm and shoulder. He then, with the knife, forced her to submit to intercourse. They had intercourse three times during the night. Each time she refused. Defendant went to sleep. Because she cannot see at night, Conrad decided to wait until morning to leave and went to sleep for a short period. After awakening, she left the house while defendant was still asleep. She went to a nearby house and, through use of a written note, requested the woman there to call a friend to come and get her. When she arrived at the friend's home, she told what had happened, and the rape was reported to the police.

After she reported the rape, Conrad was taken to the emergency room of the North Carolina Baptist Hospital, where she was examined by Dr. Fry. Dr. Fry testified that Conrad had a large bruise in the left maxillary area of her face which, because of its dark purple color, was consistent with being inflicted within the past twenty-four hours. On her left forearm and shoulder area there were several superficial skin lacerations. A pelvic exam revealed injury in the genital area consistent with traumatic and forcible penetration.

Defendant took the stand and admitted having intercourse with the prosecuting witness in the home of a friend but denied that any force was involved. He testified that Conrad voluntarily had sex with him more than once and that they both fell asleep. He also testified that he had to leave the house for a short while in the early morning hours to return a car to his sister. Conrad was still in the bed when he returned and he went back to sleep. When he awoke, she was gone.

Other facts necessary for an understanding of the questions involved on this appeal are noted below.

II.

[1] Defendant first contends that the trial court erred in allowing certain testimony by the medical expert in obstetrics and gynecology who examined Conrad after the alleged rape. After reading to the jury his medical findings, Dr. Richard Fry was asked whether he had an impression or finding from his examina-

tion of the prosecuting witness. He replied, "Yes, this examination would be consistent with a virginal pelvic exam, with evidence of traumatic and forcible penetration, which would be consistent with an alleged rape." Defendant's objection was overruled and he contends that the testimony improperly invaded the province of the jury. We disagree.

Clearly, a medical expert may not testify that the defendant raped the prosecuting witness. It is equally clear that the witness did not do so in this instance. A physician who is properly qualified as an expert may offer an opinion as to whether the victim in a rape prosecution had been penetrated and whether internal injuries had been caused thereby. *State v. Atkinson*, 278 N.C. 168, 176, 179 S.E. 2d 410, 415, *death sentence vacated*, 403 U.S. 948 (1971). Testimony that an examination revealed evidence of traumatic and forcible penetration *consistent with* an alleged rape is a proper expression for an expert witness to establish whether the victim had been penetrated by force. The doctor had previously testified as to injuries found during his examination and the challenged testimony was merely a shorthand statement summarizing those findings. We find nothing improper about this testimony. *See State v. Hunter*, 299 N.C. 29, 261 S.E. 2d 189 (1980). This assignment of error is overruled.

### III.

[2] Upon the reconvening of court on the morning of 4 February 1981, defense counsel, out of the presence of the jury, requested that the trial court make an advance ruling on the admissibility of two questions which he proposed to ask the prosecuting witness: (1) "Are you or are you not a virgin?" and (2) "Are you or are you not on birth control pills?", Defense counsel made this request primarily on the basis of an article in the morning newspaper which implied that Dr. Fry, the examining physician, had testified that the prosecuting witness was a virgin. Defendant contended then and now that Dr. Fry's testimony implied that the prosecuting witness was a virgin and that, since his entire defense was based on consent, the trial court should have allowed him to refute the implications of that testimony. Defendant argues that allowing testimony giving rise to the implication that he had raped a virgin without affording him an opportunity to refute the evidence was extremely prejudicial. The trial court ruled that the

requested questions were irrelevant to any issue in the case. Defendant now concedes that the question concerning birth control pills would have been impermissible under the rape victim shield statute, G.S. § 8-58.6 (1981), but strongly contends that the question concerning the prosecuting witness's virginity should have been allowed and that its denial was prejudicial to him. We disagree.

First, we disagree with defendant that Dr. Fry implied that the prosecuting witness was a virgin. He did testify that, "Her vagina was examined with a Pedersen speculum. And that is an instrument that is small, that is used to examine vaginas that have not—we use the medical term virginal, *but that is not to imply the secular term* . . . . [T]his examination would be consistent with a virginal pelvic exam, with evidence of traumatic and forcible penetration . . . ." (Emphasis added.) We find nothing in the testimony of Dr. Fry which indicates that he considered this victim to be a virgin.

Moreover, the tendered questions were inadmissible under G.S. 8-58.6. That statute provides, in pertinent part, as follows:

(b) The sexual behavior of the complainant is irrelevant to any issue in the prosecution unless such behavior:

   (1) Was between the complainant and the defendant; or

   (2) Is evidence of specific instances of sexual behavior offered for the purpose of showing that the act or acts charged were not committed by the defendant; or

   (3) Is evidence of a pattern of sexual behavior so distinctive and so closely resembling the defendant's version of the alleged encounter with the complainant as to tend to prove that such complainant consented to the act or acts charged or behaved in such a manner as to lead the defendant reasonably to believe that the complainant consented; or

   (4) Is evidence of sexual behavior offered as the basis of expert psychological or psychiatric opinion that the complainant fantasized or invented the act or acts charged.

Clearly, neither of the questions which defense counsel desired to ask the prosecuting witness fall into the exception noted above. "Naked inferences of prior sexual activity by a rape victim with third persons, without more, are irrelevant to the defense of consent in a rape trial. G.S. 8-58.6 merely codifies this rule . . . ." *State v. Fortney,* 301 N.C. 31, 44, 269 S.E. 2d 110, 117 (1980). This assignment of error is overruled.

## IV.

[3]  Defendant next contends that the trial court erred in allowing the prosecuting witness to testify that she suffered from "night blindness," that the witness Diane Hill was also allowed to testify that the prosecuting witness suffered from "night blindness," and in allowing a medical assistant technician to an opthalmologist to read from the doctor's medical files that the prosecuting witness suffered from "retinitis pigmentosa," commonly referred to as "night blindness." With respect to the testimony of the prosecuting witness and Diane Hill, defendant argues that the testimony was irrelevant and prejudicial, introduced solely for the purpose of eliciting sympathy for the prosecuting witness and to stir up the emotions of the jury against the defendant. He also contends that "night blindness" is a medical term referring to a disease of the eye and that neither the prosecuting witness nor Hill were qualified to give such testimony. Defendant also contends that the introduction of the medical report was incompetent as hearsay testimony. We find no error in the trial court's rulings.

We note first that the testimony was clearly relevant. A review of the entire record discloses that the prosecuting witness had difficulty in identifying the location of the house in which she was attacked and the car in which she was abducted. The challenged testimony was therefore relevant to explain the witness's inability to give a clearer description of the circumstances surrounding the crime. Moreover, the testimony of the prosecuting witness and Hill was not improper despite their lack of medical expertise. Clearly, the prosecuting witness had full knowledge of her own state of health. Hill's testimony was given merely to corroborate that of the prosecuting witness. It is well established that a lay witness may give an opinion concerning the state of a person's health. *Carter v. Bradford,* 257 N.C. 481, 126 S.E. 2d 158 (1962); 1 *Stansbury's North Carolina Evidence* § 129 (Brandis rev. 1973).

The testimony of Maureen Brenna Anderson, medical assistant technician to Dr. Phillip McKinley, was properly admitted. Anderson was allowed to testify, in corroboration of the prosecuting witness, that Dr. McKinley's opthalmological records disclosed that the prosecuting witness had an eye disease called "retinitis pigmentosa," or night blindness. The testimony was properly admitted for the purpose of corroborating the prosecuting witness's testimony. Although the entry in the records was hearsay, it is admissible under the business records exception. In this jurisdiction if business entries are made in the regular course of business, at or near the time of the transaction involved, and are authenticated by a witness who is familiar with them and the system under which they were made, they are admissible as an exception to the hearsay rule. 1 *Stansbury's North Carolina Evidence* § 155. Anderson testified that she is the keeper and has the custody and control of the doctor's medical records, that they are made in the regular course of business and that they are made close to the time of the transaction indicated. She was clearly familiar with the records and the system under which they were made and her testimony was used since Dr. McKinley was on vacation at the time of the trial. The testimony was competent and admissible and this assignment of error is overruled.

## V.

Defendant next contends that the court erred in allowing the district attorney to ask a State witness whether she was sitting with the defendant's mother and family in court. This question was asked after the witness had testified without objection that she had come to court with the defendant's family and prior to any substantive testimony. While defendant may be correct in arguing that the question elicited irrelevant information, we can perceive no prejudice to the defendant. This assignment is without merit.

## VI.

[4] At the close of the State's evidence, defendant moved to strike all the testimony of the prosecuting witness on the primary ground that it was not understandable. As noted above, Conrad's testimony was presented through the aid of an interpreter utilizing the American sign language. Defendant points to numerous

discrepancies in the prosecuting witness's testimony and is particularly concerned with the testimony of the interpreter, Patricia Lewis, that, "It has been my experience with Enola Conrad in interpreting her signs that she will be talking about one thing completely different from what you are asking about." The trial court's denial of his motion to strike Conrad's testimony constitutes defendant's next assignment of error.

It is well settled in this jurisdiction that any question concerning the competency of a witness is left to the discretion of the trial judge and his decision is not reviewable except for a clear abuse of discretion. 1 *Stansbury's North Carolina Evidence* § 55. Defendant cites us to no North Carolina case regarding the competency of a deaf mute and our research discloses none. The general rule appears to be that deaf and mute persons are not incompetent as witnesses merely because they are deaf and mute if they are able to communicate the facts by a method which their infirmity leaves available to them and are of sufficient mental capacity to observe the matters as to which they will testify and to appreciate the obligation of an oath. 97 C.J.S. *Witnesses* § 61 (1957).

We find no error in the trial court's ruling nor do we find any abuse of discretion. The interpreter was honest in stating to the court and to the jury the difficulty inherent in interpreting the testimony of a deaf mute for a jury. She explained that had she been engaged in conversation with Conrad alone, she would have been able to better relate the questions to her because she would then be free to use more detail to establish a frame of reference necessary for one speaking through sign language. On the other hand, when interpreting before a jury, Lewis explained that, "I try to stay as close as I can to the exact language as the individual that is asking the question." This makes the communication more difficult. However, Lewis added:

> I have determined and seen whether she understood, and if I knew she hadn't understood, I would phrase it so that she would understand close to the question that you have given me, and sometimes you have heard me ask if I could use another word. Each time that I have asked to use another word that permission was given.

It is clear from the interpreter's testimony that she was extremely sensitive both to the severe handicap of the prosecuting

witness and to the necessity for interpretation in language practically identical to that used by the questioner and answerer. We agree with defendant that confusion undoubtedly arose during this lengthy trial conducted through an interpreter using sign language, but such confusion is, we think, inevitable in any circumstances similar to those disclosed by this record. Society has recognized the necessity for a means of communication under such circumstances, and the method employed here was proper in every respect. Indeed, we know of no other practical method by which a trial could be conducted under these circumstances. This Court, like the trial court, is unable to bestow upon the prosecuting witness the ability to hear and to speak. The jury was made aware of the problems of interpreting. Any confusion arising from the use of sign language to communicate with a deaf and mute witness goes to the weight, and not the admissibility, of the evidence. To hold otherwise would allow this defendant and others to commit crimes against persons born deaf and mute with impunity. This assignment of error is overruled.

Defendant next contends that his motion to dismiss at the close of the State's evidence and at the close of all the evidence should have been allowed. He concedes, however, that if we found no error in the trial court's ruling concerning the testimony of Conrad, as discussed in the preceding paragraphs, then the evidence would be sufficient to carry the case to the jury. In light of our ruling above, this assignment of error is also overruled.

## VII.

[5] Defendant next contends that the trial court erred in failing to sustain his objections to the question posed to witnesses James Smith, Evonia Smith and Margarine Surles inquiring if they had testified to the same facts at the preliminary hearing. Defendant contends that the trial court first overruled his objection and then instructed the jury to disregard this line of questioning, but that such instructions failed to cure the resulting prejudice. As we understand it, defendant believes his fifth amendment rights were violated because a defendant is never required to offer evidence at a preliminary hearing and allowing the State to comment on the failure of defendant's witnesses to testify at a preliminary hearing places defendant in the predicament of having to decide ás early as the hearing whether to put on evidence.

State v. Galloway

Defendant contends that jurors may believe that a preliminary hearing is a "full fledged trial" such that these same witnesses could have had the charges against him dismissed. Or, defendant contends, jurors might believe that defendant has been found guilty at a preliminary hearing and that the case on trial is merely an appeal.

Defendant's arguments here are completely devoid of merit. First, we think defendant has misread the record of these proceedings. At no point do we find the State asking any of the above witnesses whether they testified to the same matters at the preliminary hearing. The witness James Smith was asked, "did you testify to that matter down there?" He was not asked if his testimony at trial was the same as that at preliminary hearing. Our review of the record discloses that reference to the preliminary hearing arose during the questioning of these witnesses as a result of the State's inquiry as to whether the witnesses had told Officer Moorefield their versions of the alleged incidents. Officer Moorefield was present at the preliminary hearing, as were these witnesses, but did not testify. Each witness responded simply that they had not told Officer Moorefield at that time. We find nothing to indicate that the State was making inquiry of these witnesses as to what their testimony was at a preliminary hearing.

Moreover, had there been any impropriety, it was clearly cured by the trial court's correcting instructions. He instructed the jury as follows:

Members of the Jury, in response to a question or questions asked by the District Attorney on cross-examination of some of the defendant's witnesses, it was brought out that some of these witnesses were in attendance at the preliminary hearing held in July in the District Court here in the courthouse, and it was further brought out that they did not testify at this preliminary hearing. Now, you are not to consider this evidence for any purpose in this trial; you are to disregard this evidence. A preliminary hearing is not a trial on the merits; it is merely held to determine whether or not there is probable cause to submit the case to the Grand Jury. A defendant is not required to put on evidence any time. Therefore, whether or not a witness testified at a

preliminary hearing is of no importance as far as this trial is concerned, and you shall not consider this evidence for any purpose. It is irrelevant. You shall disregard this evidence.

This instruction is clear and unequivocal and was sufficient to prevent prejudice to the defendant. This assignment of error is overruled.

## VIII.

[6] Defendant next contends that the trial court erred in allowing the district attorney to make inquiry concerning a tatoo of the word "sex" on defendant's arm. Defendant argues that such evidence was clearly irrelevant and prejudicial to him. We agree with defendant that the testimony was irrelevant but disagree that any prejudice resulted.

It has long been the rule in this jurisdiction that not every erroneous ruling on the admissibility of evidence will result in a new trial being ordered. Where evidence has been improperly admitted would not, if excluded, have changed the result of the trial, a new trial will not be granted. 1 *Stansbury's North Carolina Evidence* § 9. The burden is on the appellant not only to show error but also to show that there is a reasonable possibility "that, had the error in question not been committed, a different result would have been reached at the trial." G.S. § 15A-1443 (1978).

Here, we do not find any reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial. Defendant gave a perfectly understandable explanation of the tatoo. He simply noted that it was something that young men often did in their youth. We cannot imagine that the jury gave any consideration to this testimony in reaching its verdict. Clearly, the matter was decided in the minds of the jurors by their choosing to believe the prosecuting witness's version of the events of that evening and not that of the defendant's. This assignment of error is overruled.

## IX.

[7] Defendant finally contends that the trial court erred in allowing the district attorney to cross-examine defendant concerning prior misconduct by defendant. On cross-examination, the district

attorney asked defendant, "did you assault Sandra Richardson with the intent to commit rape?" The defendant answered in the negative.

Defendant's primary contention is that the district attorney violated a pre-trial agreement with his counsel that no questions concerning his record would be asked. Defendant concedes that he has no authority to support his allegation that violation of a pre-trial agreement between defense counsel and the State would constitute grounds for a new trial.

The State contends, and the record tends to support the view, that the district attorney agreed only not to submit the written record before the jury. Merely asking this question, the State contends, does not violate the agreement. From the record before us, we are unable to find any error in the trial court's disposition of this contention. Moreover, it is well settled in this jurisdiction that when a defendant becomes a witness and testifies in his own behalf, he is subject to cross-examination like any other witness, G.S. § 8-54 (1981), and, for purposes of impeachment, he may be cross-examined by the district attorney concerning any specific acts of misconduct which tend to impeach his character. *State v. Herbin,* 298 N.C. 441, 259 S.E. 2d 263 (1979); *State v. Purcell,* 296 N.C. 728, 252 S.E. 2d 772 (1979). The question here was obviously asked to impeach defendant's character and was properly admitted.

We have carefully examined the record before us and all contentions presented by defendant. We conclude that defendant had a fair trial, free from prejudicial error.

No error.

EXUM, Justice, dissenting.

The factual question upon which defendant's guilt or innocence hangs is whether the prosecuting witness, Enola Conrad, consented to sexual intercourse with defendant. She swore she did not consent. Defendant swore she did. Both offered corroborating testimony. Thus, the case is close on the question of consent.

I believe three errors were committed in the trial; and, because of the closeness of the case, "there is a reasonable possibili-

ty that, had [they] not been committed, a different result would have been reached." G.S. 15A-1443(a). Therefore, I believe defendant is entitled to a new trial.

First, as the majority concluded, it was error to permit the state to show the jury that defendant had the word "sex" tattooed on his arm.

Second, I believe it was error to permit Dr. Fry to testify that, in his opinion, his findings on examining Conrad were "consistent with an alleged rape." It was permissible for the doctor to give his opinion that his findings were consistent with "traumatic and forcible penetration" because these are conclusions which a medical doctor is competent to draw. "Rape," however, is a legal, not a medical, term. Because a physician is incompetent to give legal conclusions, he is, therefore, incompetent to give an opinion as to whether a person has been raped, or whether his medical findings are "consistent" with a rape.

Rape, as a legal concept, includes several elements, only one of which is force. Another is that the sexual intercourse occurred without the consent of the woman. Sexual intercourse can be forcible and traumatic in the medical sense, yet with the consent of the woman. In such a case there is no rape. Medical findings which are consistent with traumatic and forcible intercourse are not *ipso facto* consistent with rape because they are not *ipso facto* consistent with the absence of consent. Whether the woman consented, furthermore, is not a medical question upon which a physician is competent to express an opinion. It is a question upon which only the jury can pass because a physician is in no better position than the jury to have an opinion on the question of consent. The test of admissibility of expert opinion is "whether the witness because of his expertise is in a better position to have an opinion on the subject than is the trier of fact." *State v. Wilkerson*, 295 N.C. 559, 569, 247 S.E. 2d 905 (1978). To permit a physician to opine that his findings are consistent with "rape" is to permit him, improperly, to express an opinion on the question of consent, when he is in no better position to have an opinion than is the jury.

Finally, it was error to permit the district attorney to ask defendant on cross-examination whether he had assaulted "Sandra Richardson with the intent to commit rape." The record on

appeal shows that defendant had been convicted, in the past, of driving under the influence, possession of marijuana, and malicious injury to property. He had been *charged* with assault on Sandra Richardson but the charge had been voluntarily dismissed. Defendant was cross-examined about each incident. For the reasons stated in my dissent in *State v. Herbin*, 298 N.C. 441, 259 S.E. 2d 263 (1979), and *State v. Ross*, 295 N.C. 488, 246 S.E. 2d 780 (1978), it was error to permit the state to cross-examine him about the Sandra Richardson incident.