STATE OF NORTH CAROLINA v. JOHN WOOD

No. 74A81

(Filed 25 August 1982)

1. **Criminal Law § 80.1— doctor's testimony concerning test results—business records exception inapplicable**

   In a prosecution for first degree rape, the trial court erred in permitting a doctor to testify that stained slides taken from samples provided by the prosecuting witness and the defendant revealed the presence of gonococcus bacteria. The business records exception had no application to the case since, although the doctor testified that the slides were stained and interpreted in the hospital's regular course of business, the doctor did not testify as to how

he received the results and there was no form of writing or preserved record which could be duly authenticated and a proper foundation laid.

2. **Criminal Law § 53— medical witness—hearsay testimony about what was observable on stained lab slides—inadmissible**

 A doctor's testimony concerning what was observed on stained slides made from liquid from the prosecuting witness's vagina and from a liquid discharge from defendant's penis was hearsay and was not admissible to show the basis for the doctor's opinion since the doctor never gave a medical opinion and his testimony regarding the slides concerned someone else's observation of a fact in order to prove as substantive evidence the truth of that fact.

3. **Criminal Law § 169— error in admission of medical testimony—prejudicial**

 In light of a conflict in identification testimony by the State's witness and testimony by defendant's witnesses which corroborated defendant's assertion that he was not the guilty party, a doctor's testimony that fluid samples taken shortly after the rape in question from the prosecuting witness's vagina and defendant's penis both contained gonococcus bacteria became an important factor in the State's case, and its improper admission into evidence was prejudicial error.

 Justice MARTIN took no part in the consideration or decision of this case.

BEFORE *Judge William H. Helms,* presiding at the 30 March 1981 Criminal Session of RICHMOND Superior Court, and a jury, defendant was tried on indictments, proper in form, and found guilty of armed robbery (second offense), kidnapping and first degree rape. Defendant was sentenced to life imprisonment for each offense. He appeals as of right pursuant to G.S. 7A-27(a).

 *Rufus Edmisten, Attorney General, by Wilson Hayman, Associate Attorney, for the State.*

 *Adam Stein, Appellate Defender, by Ann B. Petersen, for defendant appellant.*

EXUM, Justice.

 The question presented is whether the trial court erroneously admitted the testimony of state's witness, Dr. Joseph Deese, concerning findings on certain stained slides of body fluids when these findings were made by someone other than Dr. Deese. We conclude that the doctor's testimony is inadmissible hearsay, improperly admitted into evidence over defendant's objection, and constituted prejudicial error for which a new trial must be given.

 Evidence presented by the state tended to show the following:

At 5:30 a.m. on 2 January 1981 while on her way to work Mrs. Vera Stevens stopped at the Little Giant Store on Highway 177 just outside Hamlet, N.C., to get some cigarettes. After making her purchase she left the store, got in her car and drove towards her work place. Moments after leaving the store Mrs. Stevens heard a noise in the back seat of her car. When she turned to look she saw a man sitting in the back seat holding a blue steel pistol pointed at her. Mrs. Stevens described him as being a light-skinned black man wearing a black coat, toboggan and tinted glasses. The man told her that he wanted her to "carry him somewhere," giving her directions as they drove along. Eventually he told her to turn off onto a dirt road. A short distance down the dirt road he ordered her to stop and to get in the back seat. At that point he made her take off her clothes and forced her to have sexual intercourse with him. The man kept his coat on the entire time. Mrs. Stevens testified that the material felt like it was either vinyl or leather and came down as far as his knees. It was dark at the time. Afterwards, the man let her dress and told her to drive back to the paved highway. He remained in the back seat of the car. As they were driving toward Ellerbe defendant stated he needed money. Mrs. Stevens said she had only change, less than two dollars, in her apron pocket. The man got the change. Around 6:45 that morning on Highway 211 near its intersection with Highway 5, Mrs. Stevens, at defendant's demand, let him out of the car. Mrs. Stevens drove to a nearby house and sought help. Later she was examined by Dr. Joseph Deese.

Officer Clingsmith of the Pinehurst Police Department was dispatched around 7:10 a.m. to the residence where Mrs. Stevens had gone. On his way he observed a black male wearing a three-quarter length black leather coat, toboggan and sunglasses walking along the side of Highway 211 at the entrance to Moore Memorial Hospital. After receiving a description of the assailant from Mrs. Stevens, Officer Clingsmith realized it matched that of the man he earlier had seen. An officer was dispatched to Moore Memorial Hospital to locate the man. That officer observed a black male wearing a three-quarter length black leather coat waiting in the hospital emergency room. The officer followed the man into a washroom and arrested him after the officer saw a blue steel pistol behind a commode. The officer found a toboggan and a pair of pink colored sunglasses on his person.

Defendant testified and denied his participation in the assault on Mrs. Stevens. His evidence tended to show as follows: On 2 January 1981 at approximately 5 a.m. he was at his aunt's house in Hamlet. He remained there until approximately 6:14 a.m. when he rode with his aunt and Sergeant First Class Leon J. Jiles to Aberdeen. The ride consumed approximately twenty-two to twenty-three minutes. After his aunt and Sergeant Jiles dropped him in Aberdeen, he walked to his girlfriend's house to find she had already left for work at Moore Memorial Hospital. He caught a ride part of the way, then walked the rest of the distance to the hospital. He was unable to locate his girlfriend when he got there, so he told a woman that if she saw the girl, he would be waiting in the cafeteria. After eating breakfast he went to the bathroom where he was confronted by police and placed under arrest.

The principal question for the jury at trial was the identity of Mrs. Stevens' assailant. A voir dire was conducted to determine the admissibility of Mrs. Stevens' in-court identification of defendant. The trial court, upon the basis of Mrs. Stevens' testimony, made findings of fact essentially as follows: Mrs. Stevens was abducted while it was dark at 5:30 a.m. on 2 January 1981; during the hour and fifteen minutes that Mrs. Stevens was with her assailant she had some opportunity to see his face; the parking area surrounding the Little Giant Store was well lighted and during their long drive, including passing through the town of Hamlet, they went through several areas lighted by street lights; the dashboard lights provided some illumination of the interior of the car; Mrs. Stevens had seen the man on one or two previous occasions at the Little Giant Store; it "was becoming light" at 6:45 a.m. when Mrs. Stevens' assailant left her; no pretrial identification procedures were conducted by the state; and Mrs. Stevens did recognize defendant as her assailant immediately upon his entering the courtroom. Upon these findings the judge overruled defendant's objections to Mrs. Stevens' in-court identification.

In addition to Mrs. Stevens' testimony before the jury, which accorded with her voir dire testimony, the state relied on its medical witness, Dr. Deese, to provide evidence implicating defendant as the perpetrator of the offenses. Dr. Deese testified that during examination of Mrs. Stevens he prepared a slide of liquid he observed at the bottom of her vagina beneath the cer-

vix. During examination of defendant he likewise prepared a slide of a liquid discharge from defendant's penis. Both slides were sent to the hospital's laboratory for staining (the physician referred to it as a "gram stain") and interpretation. Dr. Deese never saw the slides after he sent them to the laboratory. He neither stained nor interpreted the slides. Yet, over objection, he was permitted to testify that both stained slides revealed the presence of gonococcus bacteria, a bacteria that causes the venereal disease gonorrhea. As to Mrs. Stevens' slide, Dr. Deese did not say how he learned of the interpretation of the slide. As to defendant's slide, Dr. Deese referred to "results of the gram stain" which had been "returned" to him. The trial transcript does not reveal the form of the returned results. We do not know whether they were oral or written.

Obviously Dr. Deese testified to an observable fact, *i.e.*, the presence of gonococcus bacteria in liquid samples as revealed by the stained slides, when he himself did not make the observation. His testimony is based upon what someone else who did stain, observe and interpret the slides told him about that person's observation. Furthermore, Dr. Deese's testimony is offered to prove the truth of someone else's observation, *i.e.*, that the stained slides did reveal the presence of gonococcus bacteria. Thus Dr. Deese's testimony as to what the slides revealed is hearsay and inadmissible unless it comes within an exception to the hearsay rule. "Hearsay evidence consists of the offering into evidence of a statement, oral or written, made by a person other than the witness for the purpose of establishing the truth of the matter so stated." *Wilson v. Hartford Accident and Indemnity Co.*, 272 N.C. 183, 188, 158 S.E. 2d 1, 5 (1967); *Bullock v. Insurance Company of North America*, 39 N.C. App. 386, 250 S.E. 2d 732, *cert. denied*, 297 N.C. 176, 254 S.E. 2d 39 (1979). The state concedes as much.

[1]   The state urges first the applicability of the business records exception to the hearsay rule. This Court stated the business records exception in *Sims v. Insurance Co.*, 257 N.C. 32, 35, 125 S.E. 2d 326, 329 (1962), as follows:

Ordinarily, therefore, records made in the usual course of business, made contemporaneously with the occurrences, acts, and events recorded by one authorized to make them

and before litigation has arisen, are admitted upon proper identification and authentication.

In *Sims* the Court applied that rule to hospital records, saying, *id.*:

> In instances where hospital records are legally admissible in evidence, proper foundation must, of course, be laid for their introduction. The hospital librarian or custodian of the record or other qualified witness must testify to the identity and authenticity of the record and the mode of its preparation, and show that the entries were made at or near to the time of the act, condition or event recorded, that they were made by persons having knowledge of the data set forth, and that they were made *ante litem motam*. The court should exclude from jury consideration matters in the record which are immaterial and irrelevant to the inquiry, and entries which amount to hearsay on hearsay.

Recently this Court applied the business records exception in permitting a state's witness, an ophthalmologist's technician, to read from records maintained by the ophthalmologist after the records themselves had been duly authenticated and a proper foundation laid. *State v. Galloway*, 304 N.C. 485, 284 S.E. 2d 509 (1981). We said in *Galloway*, 304 N.C. at 492, 284 S.E. 2d at 514:

> Although the entry in the records was hearsay, it is admissible under the business records exception. In this jurisdiction if business entries are made in the regular course of business, at or near the time of the transaction involved, and are authenticated by a witness who is familiar with them and the system under which they were made, they are admissible as an exception to the hearsay rule. 1 *Stansbury's North Carolina Evidence* § 155. Anderson testified that she is the keeper and has the custody and control of the doctor's medical records, that they are made in the regular course of business and that they are made close to the time of the transaction indicated. She was clearly familiar with the records and the system under which they were made and her testimony was used since Dr. McKinley was on vacation at the time of the trial. The testimony was competent and admissible and this assignment of error is overruled.

It was also true in *Galloway,* although not alluded to in the opinion, that the records there were made *ante litem motam.*

The business records exception has no application to this case. It is true that Dr. Deese testified that the slides were stained and interpreted in the hospital's regular course of business; but as the cases referred to above show, the exception contemplates the existence of some kind of writing or other form of preserved record which can be duly authenticated. Here the trial transcript does not show the existence of any such writing. Dr. Deese referred only to certain "results" which were "returned" to him. The writing, if there was one, was not duly authenticated. There is no testimony that the writing itself, if there was one, was prepared in the regular course of business; nor does it appear that the writing, if it existed, was prepared *ante litem motam.* The state cannot, therefore, be aided by the business records exception.

[2]  The state next argues that the testimony was admissible to show the basis for Dr. Deese's opinion. The state relies on *State v. Wade,* 296 N.C. 454, 251 S.E. 2d 407 (1979), where, after summarizing the cases, we concluded, 296 N.C. at 462, 251 S.E. 2d at 412:

> (1)  A physician, as an expert witness, may give his opinion, including a diagnosis, based either on personal knowledge or observation or on information supplied him by others, including the patient, if such information is inherently reliable even though it is not independently admissible into evidence. The opinion, of course, may be based on information gained in both ways.
>
> (2)  If his opinion is admissible the expert may testify to the information he relied on in forming it for the purpose of showing the basis of the opinion. *Penland v. Coal Co., supra,* 246 N.C. 26, 97 S.E. 2d 432.

This argument is severely undercut by the state's earlier concession that Dr. Deese's testimony about what was observable on the stained slides is hearsay (inasmuch as it was offered to prove the truth of the observation) and our conclusion that this concession is correct. Testimony as to matters offered to show the basis for a physician's opinion and not for the truth of the matters testified

State v. Wood .

to is not hearsay. "We emphasize again that such testimony is not substantive evidence." *State v. Wade, supra,* 296 N.C. at 464, 251 S.E. 2d at 412. Its admissibility does not depend on an exception to the hearsay rule, but on the limited purpose for which it is offered. Here Dr. Deese never gave a medical opinion. His testimony regarding the slides was not given to show the basis for an opinion. He testified, as we have shown, to someone else's observation of a fact in order to prove as substantive evidence the truth of that fact. This second argument in support of admissibility must therefore fail.

[3] Finally the state argues that even if Dr. Deese's testimony was inadmissible, the error in admitting it was harmless in light of other evidence tending to identify defendant as the perpetrator. Evidence erroneously admitted is prejudicial, or reversible, error if "there is a reasonable possibility that, had the error . . . not been committed, a different result would have been reached at trial. . . ." G.S. 15A-1443(a). The "burden of showing that such a possibility exists rests upon the defendant." *State v. Easterling,* 300 N.C. 594, 609, 268 S.E. 2d 800, 809; *accord,* G.S. 15A-1443(a). It is true that there is other testimony in the case, including the victim's identification of defendant, from which a jury could conclude that defendant was the guilty party. Defendant, however, swore that he was not the assailant. His witnesses, namely his aunt and her friend Sergeant Jiles, corroborated defendant's testimony that defendant was with them at the time the assault on Mrs. Stevens occurred. In light of this conflict in the testimony concerning the true identity of Mrs. Stevens' assailant, Dr. Deese's testimony that fluid samples taken shortly after the rape from, respectively, Mrs. Stevens' vagina and defendant's penis both contained gonococcus bacteria became an important factor in the state's case. It constituted the only scientific evidence in the case given by a witness who in the jury's eyes had no cause to be aligned with either side of the dispute. It probably shattered whatever balance might have existed in other evidence for the state and for defendant. We conclude, therefore, that there is at least a reasonable possibility that a different result would have been reached at trial had this evidence not been admitted.

Defendant has filed a motion for appropriate relief with this Court pursuant to G.S. 15A-1418 pending appeal. One of the

grounds asserted in the motion is the availability of evidence allegedly unknown to defendant at the time of trial despite defendant's attempt to discover it before trial. The evidence alluded to is a lab report concerning the stained slides. According to the allegations in the motion, a medical expert secured by defendant asserts that the lab report indicates that the stained slides are "nonconfirmatory" for gonococcus bacteria. We cannot here assess the validity of this allegation. Because of our disposition of the case it is unnecessary for us to do so or to take further action on the motion. If, of course, the allegation in the motion is true, it illustrates the hazard in permitting testimony of the sort given by Dr. Deese.

For error committed, defendant is to be given a

New trial.

Justice MARTIN took no part in the consideration or decision of this case.