STATE OF NORTH CAROLINA v. FREDERICK JONES

No. 361A87

(Filed 2 June 1988)

**Criminal Law § 60.3— fingerprint evidence—opinion of nontestifying expert admissible**

The trial court properly admitted a fingerprint identification opinion rendered by an expert who did not testify at trial for the purpose of revealing one basis underlying a testifying expert's opinion given under N.C.G.S. § 8C-1, Rule 703.

Justice WEBB dissenting.

APPEAL of right by defendant pursuant to N.C.G.S. § 7A-27(a) (1986) from a judgment imposing a sentence of life imprisonment entered by *Allen (J. B., Jr.), J.*, upon defendant's conviction of first degree burglary at the 6 March 1987 Criminal Session of Superior Court, JOHNSTON County. On 7 December 1987 we allowed defendant's petition to bypass the Court of Appeals on his appeal from a conviction of second degree rape for which he received a sentence of twelve years to run consecutively to the life sentence. Heard in the Supreme Court 11 April 1988.

*Lacy H. Thornburg, Attorney General, by G. Patrick Murphy, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Daniel R. Pollitt, Assistant Appellate Defender, for defendant-appellant.*

WHICHARD, Justice.

Defendant was convicted of the second degree rape of an eighty-six-year-old woman and the first degree burglary of her home. Upon finding factors in aggravation of punishment, the trial court imposed a life sentence for the burglary. As punishment for the rape, it sentenced defendant to a term of twelve years to run consecutively to his life sentence.

This appeal concerns the admissibility of a fingerprint identification opinion rendered by an expert who did not testify at trial. We hold that the trial court properly admitted the out-of-court expert's opinion for the purpose of revealing one basis underlying a testifying expert's opinion given under N.C.G.S. § 8C-1, Rule 703.

The State's evidence, in pertinent part, showed the following:

The victim, an eighty-six-year-old widow, lived alone. Around 4:00 a.m. on 9 September 1986, she awoke to find a man standing beside her bed. Proclaiming "I'm going to get what I came for," the intruder crawled onto the victim's bed and began to beat and to choke her. He also smothered her with her bed pillows. When she turned her head toward him, he would twist her head back and threaten to kill her. The intruder forced the victim to have non-consensual sexual intercourse. He then left. After washing herself, the victim called her daughter and the police.

The daughter and her husband transported the victim to the hospital. A nurse, who participated in the examination of the victim, described her as "severely beaten." She observed that the victim had bruises on her wrist, her left eye was swollen shut and blackened, her buttocks were bruised and scratched, and her vagina was torn and bleeding.

Smithfield policeman Steve Knox arrived at approximately 4:25 a.m. Knox discovered that the bottom right pane was missing from the victim's bathroom window. While examining the exterior of the house, he observed a cinder block lying under the bathroom window. About twenty feet from the house, he found an eight-by-ten glass pane that had been broken and taped back together. Although dew had fallen that night, the side of the pane facing up was dry, while the bottom was damp.

The victim could not positively identify the intruder. At trial, she described him as a black male, wearing shorts, who had an odor of alcohol about his person.

S.B.I. Special Agent Ricky Navarro testified as an expert in fingerprint identification. He had identified one latent print found on the windowpane as belonging to defendant. He based his opinion on ten points of identification and on the verification of another fingerprint expert.

S.B.I. Special Agent Troy Hamlin, an expert in forensic hair examination, testified that he had examined a hair found on the bath cloth used by the victim to clean herself after the assault. Hamlin determined that the hair did not belong to the victim. He found this hair to be similar to defendant's hair. However, due to the limited nature of the sample, he could not conclude that the hair was defendant's.

S.B.I. Special Agent David Spittle, an expert in forensic serology, testified that he tested defendant's blood and that defendant is a Type-B secretor. Spittle testified that semen found on the victim's nightgown and vagina was produced by a Type-B secretor.

Defendant presented the following pertinent evidence:

Defendant denied committing the assault. He had lived across from the victim for several years and had frequently used a path

running through the victim's yard to walk to the store. Walt Sanders owns property adjoining the victim's home. A stack of building materials lies beside a storage shack on Sanders' property. A couple of months prior to the incident, defendant helped Sanders move a disabled truck from the area near the storage shack. In clearing a path for the truck, defendant handled several window frames that lay in the stack of building materials.

Sanders testified that defendant helped him move the truck and that there were window frames stacked beside the storage shed. Sanders did not know whether defendant had handled the frames.

Defendant contends solely that the trial court erred by admitting hearsay evidence that an unidentified S.B.I. expert independently examined, compared, and positively identified his fingerprint, and verified Agent Navarro's identification. After qualifying as a fingerprint expert, Navarro testified that he compared defendant's fingerprints to twelve latent fingerprint "lifts" found at the victim's home. He concluded that defendant's right little finger matched one of the lifts taken from the windowpane found in the victim's yard. He testified that he found ten "points of identification" on the latent lift that corresponded with the defendant's fingerprint.

The district attorney and Navarro then engaged in the following exchange:

Q. Now do you have quality control at your laboratory in the fingerprint identification section?

A. Yes, sir, we do.

Q. Would you explain to the jury what your quality control consists of?

A. Once you receive a case into the latent evidence section and you have examined or conducted the type of examination requested by the department, if an identification is effected, this identification, the report is written, a handwritten report is made. This will be taken to another latent examiner in that section who has qualified in court as an expert and your examination and your comparison and identification has to be verified and initialed on the report before the report can be typed and mailed out.

MR. SHAW: Object and move to strike.

COURT: Overruled.

A. In this particular case my identification was verified by another latent examiner in my section.

MR. SHAW: Objection and move to strike.

COURT: Overruled, motion denied.

Defendant challenges the admissibility of Navarro's statements that his identification was verified by another latent examiner in his section of the lab. He asserts that this testimony was hearsay offered as substantive evidence to prove the truth of the out-of-court expert's opinion. The State responds that this testimony was properly admitted under N.C.G.S. § 8C-1, Rule 703 to reveal a basis of Navarro's expert opinion. We agree.

The admissibility of an expert opinion based on an out-of-court communication is now governed by Rule 703. This rule provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him' at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

N.C.G.S. § 8C-1, Rule 703 (1986).

Our Court of Appeals has interpreted this rule to permit an expert witness to rely on an out-of-court communication as a basis for an opinion and to relate the content of that communication to the jury. *See In re Wheeler*, 87 N.C. App. 189, 360 S.E. 2d 458 (1987) (in giving opinion on whether child would be good candidate for adoption, expert could rely on information supplied by adoption preparation home where child had resided); *Haponski v. Constructor's Inc.*, 87 N.C. App. 95, 360 S.E. 2d 109 (1987) (in answering hypothetical question, expert medical witness could properly base opinion on notes made by another physician during treatment of plaintiff).

This Court also has held that Rule 703 permits an expert witness to base an opinion on the out-of-court opinion of an expert

who does not testify. *See State v. Allen,* 322 N.C. 176, 184, 367
S.E. 2d 626, 630 (1988); *State v. Smith,* 315 N.C. 76, 337 S.E. 2d
833 (1985).

In *Allen,* a physician testified concerning the defendant's
capacity voluntarily to waive her constitutional rights. As part of
the basis for his opinion, he consulted a psychiatric evaluation
prepared by a physician at Dorothea Dix Hospital. We held that
the Dix report was properly admitted to show part of the under-
lying basis of the testifying physician's opinion. *State v. Allen,*
322 N.C. at 184-85, 367 S.E. 2d at 629-30.

In *Smith,* the State's medical expert in part based his opinion
that the victims had been subjected to sexual intercourse on his
review of another physician's medical reports and conversations
with two other physicians. We held that these bases met the rea-
sonable reliance standard of Rule 703 and found no error in the
admission of the opinion. *State v. Smith,* 315 N.C. at 100-01, 337
S.E. 2d at 849.

Thus, under Rule 703, as interpreted in *Allen* and *Smith,* a
testifying expert can reasonably rely on the opinion of an out-of-
court expert and can testify to the content of that opinion.

This interpretation of Rule 703 accords with our pre-Rules
case law. Prior to adoption of the Rules of Evidence, we set out a
two-part framework for considering expert opinions based on out-
of-court communications. *See State v. Wade,* 296 N.C. 454, 251
S.E. 2d 407 (1979). We explained that the trial court must: (1) con-
sider the admissibility of the expert opinion based on out-of-court
communication; and (2) if the opinion is admissible, address the ex-
tent to which the testifying expert "may repeat what was told
him out of court in order to show its basis." *Id.* at 459, 251 S.E. 2d
at 410. We stated, per Justice (now Chief Justice) Exum:

> Although none of [the] cases articulates any sort of universal-
> ly applicable rule, the pattern of their holdings supports the
> following propositions: (1) a physician, as an expert witness,
> may give his opinion, including a diagnosis, based either on
> personal knowledge or observation *or on information sup-
> plied him by others,* including the patient, if such information
> is inherently reliable, even though it is not independently ad-
> missible into evidence. The opinion, of course, may be based

on information gained in both ways. (2) *If the opinion is admissible the expert may testify to the information he relied on in forming it for the purpose of showing the basis of the opinion.*

*Id.* at 462, 251 S.E. 2d at 412. We explained, quoting *State v. Griffin*, 99 Ariz. 43, 49, 406 P. 2d 397, 401 (1965), that the statement of an opinion without its basis "would impart a meaningless conclusion to the jury." *State v. Wade*, 296 N.C. at 463, 251 S.E. 2d at 413. Disclosure of the basis of the opinion is essential to the factfinder's assessment of the credibility and weight to be given to it. *Id.; see* S. Saltzburg and K. Redden, *Federal Rules of Evidence Manual* 671 (4th ed. 1986). *See also Booker v. Medical Center*, 297 N.C. 458, 479, 256 S.E. 2d 189, 202 (1979) (not error to allow medical expert to base opinion in part on history obtained from other treating physician). We stated in *State v. Allen*: "The official Commentary notes that although Rule 703 requires that the facts or data 'be of a type reasonably relied upon by experts in the particular field' rather than that they be 'inherently reliable,' [as stated in *Wade*], the thrust of *Wade* is consistent with the rule." 322 N.C. at 184, 369 S.E. 2d at 630.

In another pre-Rules case, we explained:

Testimony as to matters offered to show the basis for a physician's opinion and not for the truth of the matters testified to is not hearsay. "We emphasize again that such testimony is not substantive evidence." *State v. Wade*, . . . 296 N.C. at 464, 251 S.E. 2d at 412. Its admissibility does not depend on an exception to the hearsay rule, but on the limited purpose for which it is offered.

*State v. Wood*, 306 N.C. 510, 516-17, 294 S.E. 2d 310, 313 (1982), *quoted in State v. Allen*, 322 N.C. at 184, 367 S.E. 2d at 630. Our Court of Appeals, in an opinion by Judge (now Justice) Webb, followed *Wade* and *Wood* in holding that a physician's opinion based on tests performed by someone else, and his testimony as to the information upon which he relied, were admissible. *State v. Edwards*, 63 N.C. App. 737, 306 S.E. 2d 160 (1983).

While *Wade, Booker, Wood* and *Edwards* all dealt with expert medical testimony, the principles set forth therein apply to

expert testimony generally. *See State v. Huffstetler*, 312 N.C. 92, 107, 312 S.E. 2d 110, 120 (1984), *cert. denied*, 471 U.S. 1009, 85 L.Ed. 2d 169 (1985) ("It is . . . clear that the new rule [703] is not confined in its application to medical and psychiatric experts."). These cases demonstrate that our well established practice has been to admit evidence otherwise inadmissible as hearsay for the purpose of revealing the basis for expert opinion testimony.

Federal courts likewise have uniformly interpreted the federal rule, which is identical to our Rule 703, to allow a testifying expert to employ another expert's opinion as the basis for his or her opinion, and to relate that opinion to the jury. *E.g., United States v. Posey*, 647 F. 2d 1048 (10th Cir. 1981) (chemist's review of another chemist's analysis); *American Universal Ins. Co. v. Falzone*, 644 F. 2d 65, 66 (1st Cir. 1981) (fire marshal's opinion as to cause of fire based in part upon reports of other investigators; "reasonable for one . . . marshal to rely on the contemporaneous and on-the-scene opinions of other investigators"); *United States v. Genser*, 582 F. 2d 292 (3rd Cir. 1978), *cert. denied*, 444 U.S. 928, 62 L.Ed. 2d 185 (1979) (I.R.S. agent's opinion based on audit done by others); *United States v. Golden*, 532 F. 2d 1244 (9th Cir. 1976) (drug enforcement agent's opinion on market value of heroin based in part on information obtained from other agents).

Applying these well established principles to the question presented, we hold that Agent Navarro's testimony regarding the other examiner's opinion was properly admitted as a part of the basis for Navarro's opinion. While the question to Navarro asked for an explanation of "quality control" rather than for the basis of his opinion, in context it is clear that the testimony related to a part of the basis for Navarro's opinion. The question was posed while the District Attorney was eliciting the basis for Navarro's opinion. In response to the inquiry about "quality control," Navarro described the procedure followed in the laboratory "before the report can be typed and mailed out." He testified that he observes the following practice: first, he conducts an examination; second, he prepares a handwritten report; and third, he submits this report to another expert examiner for verification. He specifically stated that his identification "has to be verified and initialed before it can be typed and mailed out." It is thus clear that, under standard S.B.I. operating procedures, without verification of his own opinion by another examiner, the witness could

not have arrived at, and testified to, a final conclusion regarding the fingerprint. The opinion of the other examiner thus necessarily forms a part of the basis for the opinion to which the witness testified, and it clearly was reasonable for an expert in the field of fingerprint identification to rely upon such a procedure.

Because the evidence was admissible as a basis for Navarro's opinion, but not as substantive evidence, defendant was entitled upon request to an instruction limiting its consideration to its proper scope. N.C.G.S. § 8C-1, Rule 105 (1986). He made a general objection, however, and did not request a limiting instruction. The admission of evidence which is competent for a restricted purpose will not be held error in the absence of a request by the defendant for limiting instructions. *See State v. Maccia*, 311 N.C. 222, 228-29, 316 S.E. 2d 241, 245 (1984).

Defendant's argument that the admission of Navarro's testimony violates the confrontation clause of Article I, sec. 23 of the North Carolina Constitution, and the Sixth Amendment to the United States Constitution, is without merit. "The admission into evidence of expert opinion based upon information not itself admissible into evidence does not violate the Sixth Amendment guarantee of the right of an accused to confront his accusers where the expert is available for cross-examination." *State v. Huffstetler*, 312 N.C. at 108, 322 S.E. 2d at 120-21. Defendant had ample opportunity to cross-examine Navarro. Further, because Navarro's challenged testimony was not offered for the truth of the matter asserted, but as a part of the basis for Navarro's opinion, it was not hearsay. *State v. Allen*, 322 N.C. at 184, 367 S.E. 2d at 630; *State v. Wood*, 306 N.C. at 516-17, 294 S.E. 2d at 313. *See* N.C.G.S. § 8C-1, Rule 801(c) (1986). "[A]dmission of nonhearsay 'raises no Confrontation Clause concerns.'" *United States v. Inadi*, 475 U.S. 387, 398 n. 11, 89 L.Ed. 2d 390, 400 n. 11 (1986) (quoting *Tennessee v. Street*, 471 U.S. 409, 414, 85 L.Ed. 2d 425, 431 (1985)).

For the reasons set forth, the assignment of error brought forward is overruled. We conclude that defendant received a fair trial, free from prejudicial error.

No error.

Justice WEBB dissenting.

I dissent from the majority. I do not believe the testimony by Mr. Navarro that his fingerprint identification was verified by another latent examiner was a fact or datum upon which he relied in forming his opinion. As I read the testimony, Mr. Navarro formed his opinion and then gave the materials to another examiner who formed his opinion. The witness' testimony as to the opinion of the second examiner should have been excluded as hearsay testimony.

In the cases cited by the majority, the experts were allowed to testify to matters upon which they based their opinions. Not one of them testified that after he had formed an opinion, the opinion was verified by another expert. The majority says that it is clear that "without verification of his own opinion by another examiner the witness could not have arrived at, and testified to, a final conclusion regarding the fingerprint." This may be true. I do not believe it follows that the opinion of the other examiner forms a part of the basis for the witness' opinion. The witness had formed his opinion at the time the verification was made. The verification may have made him more confident that he was right but he did not form his opinion based on the verification.

I vote for a new trial.