STATE OF NORTH CAROLINA v. COREY TERMAINE MILLS

No. COA09-1144

(Filed 20 July 2010)

**1. Appeal and Error— preservation of issues—objection on different grounds**

Defendant did not preserve for appellate review an argument concerning the court's refusal to allow defendant to refresh an officer's recollection where defendant was not trying to refresh the officer's recollection at the time of the court's ruling.

**2. Criminal Law— prosecutor's argument—characterization of defendant's argument**

The trial court did not abuse its discretion by not declaring a mistrial based upon the prosecutor's characterization of defense counsel's statement as a concession to murder. The prosecutor did not use abusive, vituperative, and opprobrious language or indulge in invectives, and the statement was within the wide latitude allowed counsel in closing arguments.

**3. Constitutional Law— effective assistance of counsel—remanded for evidentiary hearing**

A claim on direct appeal for relief from a first-degree murder conviction based on ineffective assistance of counsel was remanded for an evidentiary hearing where defendant contended

that his counsel made an unauthorized admission of guilt in his closing argument, but the context of the statement could not be determined because of an equipment malfunction.

**4. Appeal and Error— motion for appropriate relief— remanded for taking of evidence**

A motion for appropriate relief based on ineffective assistance of counsel was remanded for the taking of evidence where the materials before the appellate court were insufficient for a ruling.

Judge ERVIN concurring.

Appeal by defendant from judgment entered 11 December 2008 by Judge Quentin T. Sumner in Nash County Superior Court. Heard in the Court of Appeals 24 February 2010.

*Attorney General Roy Cooper, by Special Deputy Attorney General, Norma S. Harrell, for the State.*

*Marilyn G. Ozer for defendant-appellant.*

HUNTER, JR., Robert N., Judge.

Corey T. Mills ("defendant") was convicted of second-degree murder of Danny Richardson. Defendant appeals his conviction, contending that the trial court erred by (1) not allowing defense counsel to refresh the recollection of a State's witness during recross-examination, and (2) denying defendant's motion for a mistrial based on the prosecutor's closing argument that defendant conceded to murder. Defendant also argues that he is entitled to a new trial on the grounds of *per se* ineffective assistance of counsel because he contends that defense counsel admitted guilt to murder during his closing argument without defendant's knowledge or consent.

We note that due to an unknown error, the official court reporter was unable to transcribe defense counsel's closing argument, and that she was only able to transcribe the last half of the prosecutor's closing argument. However, the record contains an abbreviated statement, agreed to by counsel, of the exchange in question. Nevertheless, based on the record before us, we cannot resolve the issue of whether defendant should be entitled to a new trial based on his ineffective assistance of counsel claim. Therefore, we remand that assignment of error, along with defendant's motion for appropriate relief, wherein he also asserts a claim for ineffective assistance of

counsel to the trial court to conduct an evidentiary hearing and make a determination on that issue. However, as to defendant's contentions that the trial court erred by failing to allow defense counsel to refresh a State witness's recollection and by denying his motion for mistrial, for the reasons asserted below, we hold that the trial court committed no prejudicial error and did not abuse its discretion in so ruling.

## I. FACTUAL BACKGROUND

At approximately 1:30 a.m. on 26 November 2006, defendant shot Danny Richardson ("Richardson") in the parking lot in front of Moore's Ball Field in Nash County, North Carolina. Richardson died as a result of a gunshot wound to the head. After the shooting, defendant waited in the parking lot until Nash County Sheriff's Deputies arrived, whereupon defendant was arrested and indicted for first-degree murder.

On 8 December 2008, defendant was tried before a jury in Nash County Superior Court. At trial, the State's evidence tended to show the following: On 25 November 2006, a group of friends went to "The Club," a night club located in a building in front of Moore's Ball Field on Hedgepeth Road in Nash County, North Carolina. At "The Club," Tiesha Snow ("Snow") went to use the bathroom. After noticing the long line, Snow got into an argument with an unnamed man as she attempted to use the men's restroom. After this argument, Snow and a fellow partygoer, Danny Richardson, exited "The Club" and went to Richardson's car where Snow retrieved a .22 caliber gun from her purse.

Richardson and Snow approached the unnamed man to discuss the confrontation between him and Snow in front of the men's restroom, whereupon the club management asked the debaters to leave. The argument continued outside "The Club," at which point Snow gave Richardson her gun and he began to fire shots into the air. After firing shots, Richardson brought his arm down and, in doing so, hit Tim Hendricks ("Hendricks") in the head with the handle of the gun. Hendricks was arguing with another man standing near Richardson at the time he was hit in the head. Hendricks thought he had been shot because his head was bleeding.

Snow, who was standing next to Richardson, persuaded Richardson to leave the parking lot and go to his car. Richardson got in the driver's seat of the vehicle and Snow entered the back seat. At trial, Snow testified that, at this time, she saw defendant "running up with the gun," saying "something like you shot my cousin, Tim."

Defendant subsequently fired a .45 caliber gun at Richardson. The bullet struck Richardson in the head. After being shot, Richardson was rushed to the hospital by Snow and some of their other friends. While en route to the hospital, Richardson was transferred to an ambulance that was responding to a 911 call about the incident at the ball field. There the emergency personnel pronounced Richardson dead, and police were called.

Officer Rugh, the first responding officer, found defendant at the crime scene and took a brief statement. In that statement, defendant admitted that he shot Richardson in self-defense. Defendant was then taken to the Nash County Sheriff's Office for further questioning while the other responding officers surveyed the area. Officers noticed a significant amount of blood on the driver's seat of Richardson's car, and found a .22 caliber semiautomatic gun under the car, along with .22 caliber and .45 caliber shell casings in close proximity to Richardson's car. The bullet fragments that were recovered from Richardson's body were confirmed by the State Bureau of Investigation to have been fired from the .45 caliber gun which was recovered at the scene. The .45 caliber gun was admittedly fired by defendant at Richardson that night.

Meanwhile, back at the sheriff's office, defendant was read, and waived, his *Miranda* rights. Investigator David Brake conducted an interview of defendant at the sheriff's office. Investigator Brake testified that defendant admitted shooting Richardson. When Investigator Brake asked defendant why he had shot Richardson, defendant told the investigator three different stories: first, defendant stated that the shooting was an accident; second, defendant stated that he shot Richardson because he thought Richardson shot his cousin, Hendricks; and third, defendant stated that he was scared and just wanted to scare Richardson the way Richardson had scared him.

During cross-examination, the following colloquy ensued between defense counsel and Investigator Brake:

[Defense Counsel]: So, you're saying in that time that you interviewed [defendant] there was never any talk about [Richardson] pointing the gun at him?

[Investigator Brake]: Never; no, sir. He never told me he pointed a gun at him. He told that he shot up in the air three times coming out of the club and he did indicate that [Richardson] shot up in the air again after getting in the car. He never told me in the interview that [Richardson] pointed a gun at him.

[Defense Counsel]: So it would be your testimony that he said that to the very first officer that he saw—

[Investigator Brake]: No—

[Defense Counsel]: —and he never said it again.

[Investigator Brake]: —I can't say what he said to the very first officer he saw. I can only say what he said to me. And he didn't say that to me.

[Defense Counsel]: But you do admit that he—you did later see that report right?

[Investigator Brake]: I saw in the report that [the first officer] took him into custody and I believe in the report that he said that it was self-defense; yes, sir.

[Defense Counsel]: And that he pointed a gun at me, do you remember anything about that?

[Investigator Brake]: I don't remember that. I do remember that [the first officer] indicated in his report that he stated self [-]defense.

During redirect examination, the investigator maintained that, during his interview of defendant, defendant never actually stated that he shot Richardson in self-defense.

During his recross-examination of Investigator Brake, defense counsel marked defendant's initial written statement to Officer Rugh as defendant's Exhibit 3 for the purpose of showing that the investigator was aware that defendant stated that he shot Richardson in self-defense prior to the interview. The State contends that defendant's original statement was initialed by Investigator Brake. After considering the State's objection to defense counsel's attempt to admit a portion of defendant's initial statement, the trial court sustained the objection and told defense counsel that he could admit the document in evidence during defendant's case. The trial court did, however, allow defense counsel to resume recross-examination limited only to the issue of self-defense. With regard to this issue, defense counsel engaged Investigator Brake in the following colloquy:

[Defense Counsel]: Are you sure that he never said the word self defense during the interview at the time that you were with him?

[Investigator Brake]: I cannot say for sure he didn't say the words self defense, but he never told us and urged another story where Danny Richardson pointed a gun at him and he shot him in self defense. We talked for four hours, and I can't honestly sit here and tell you he never said the words self defense, but he never told us or never told me that he shot Danny Richardson because Danny Richardson pointed a gun at him and he was shooting in self defense.

[Defense Counsel]: So you never heard the words I shot him in self defense?

[Investigator Brake]: I can't honestly tell you I did or didn't. I know he didn't tell me what he said earlier about Danny Richardson pointing a gun at him and him shooting him in self defense.

. . . .

[Defense Counsel]: Now, but it's possible that the words I shot him in self defense were said and you just don't remember them right? Are you absolutely sure they weren't said?

[Investigator Brake]: No, they—

[Prosecutor]: Objection, Your Honor. It's already been asked and answered.

THE COURT: Sustained.

The State rested its case after Investigator Brake's testimony, whereupon defense counsel made a motion to dismiss the charge of first-degree murder against defendant. The trial court denied defense counsel's motion.

The evidence for the defense tended to show the following: Defendant arrived at "The Club" at approximately 1:30 a.m. Upon his arrival, defendant witnessed an argument between Snow and his brother over Snow's use of the men's restroom. At trial, defendant testified that he was standing near Snow and Hendricks while Richardson was firing the gun in the air, and that he saw Richardson injure Hendricks. Defendant further testified that he was at his brother's car checking on Hendricks immediately before he shot Richardson. Defendant's brother was parked beside Richardson's car, and defendant testified that while he was checking on Hendricks, he saw Richardson pointing a gun in their direction, at which point he

grabbed the .45 caliber gun from Hendricks and fired it in Richardson's direction.

Defendant also testified that he stayed at the ball field until officers arrived, whereupon he told one of the officers about the events that transpired that night and that he shot Richardson in self-defense. During his testimony, defendant conceded that he did not tell the interviewing investigators that he shot Richardson in self-defense. Defense counsel did not attempt to introduce defendant's initial statement in evidence during defendant's case-in-chief; however, the State introduced defendant's complete statement as one of its exhibits while cross-examining defendant. The defense rested its case after Richardson's testimony. At the close of all the evidence, defense counsel renewed his motion to dismiss, which was denied by the trial court.

During closing arguments, defense counsel, without defendant's consent to concede his guilt of murder, stated that "a murder occurred out at the Castalia ball field."[1] The State then referred back to defense counsel's statement during its closing and told the jury that there is one thing that defense counsel said that he agreed with—a murder did occur out at the Castalia ball field that night. Defense counsel objected to the State's characterization of his statement; however, the trial court overruled defendant's objection. At the conclusion of the State's closing argument, defense counsel moved for a mistrial on the basis that the State characterized defense counsel's statement as a concession to murder. The trial court denied defendant's motion.

On 11 December 2008, after being instructed by the trial court, the jury found defendant guilty of second-degree murder. The trial court sentenced defendant to 157-198 months' imprisonment. Defendant gave notice of appeal in open court.

## II. INVESTIGATOR BRAKE'S RECROSS-EXAMINATION

[1] Defendant challenges the trial court's refusal to permit him to refresh Investigator Brake's memory using Officer Rugh's report during recross-examination. We conclude that defendant's argument was not properly preserved and is without merit.

N.C.R. App. P. 10(a)(1) (2010) provides that, "[i]n order to preserve an issue for appellate review, a party must have presented to

---

1. This court is unsure of the context of defense counsel's statement, because the court reporter's equipment malfunctioned during closing arguments so that all of defense counsel's argument and a majority of the State's argument were not recorded.

the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make[.]" "[A] party's failure to properly preserve an issue for appellate review ordinarily justifies the appellate court's refusal to consider the issue on appeal." *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 195-96, 657 S.E.2d 361, 364 (2008). However, where a party has failed to preserve an issue for appeal, this Court may review the assignment of error to correct fundamental errors. *Id.* In *Dogwood Dev. & Mgmt. Co., LLC*, our North Carolina Supreme Court provided the following:

> The imperative to correct fundamental error [] may necessitate appellate review of the merits despite the occurrence of default. For instance, plain error review is available in criminal appeals, for challenges to jury instructions and evidentiary issues. Our decisions have recognized plain error only "in truly exceptional cases" when "absent the error the jury probably would have reached a different verdict." . . .

> Aside from the possibility of plain error review in criminal appeals, Rule 2 permits the appellate courts to excuse a party's default in both civil and criminal appeals when necessary to "prevent manifest injustice to a party" or to "expedite decision in the public interest." Rule 2, however, must be invoked "cautiously," and we reaffirm our prior cases as to the "exceptional circumstances" which allow the appellate courts to take this "extraordinary step."

*Id.* at 196, 657 S.E.2d at 364 (citations omitted) (footnote omitted).

After reviewing the transcript and the record on appeal, we first note that defendant was not attempting to refresh Investigator Brake's recollection at the time of the trial court's ruling on the State's objection. During trial, the State did not object to any attempt by defense counsel to refresh Investigator Brake's recollection; instead, it objected to defense counsel's attempt to mark a portion of Officer Rugh's report containing defendant's initial statement as a defense exhibit during recross-examination. The State's objection was premised on its contention that, if any portion of the statement is admitted in evidence, the entire statement should also be admitted for completeness. Moreover, in response to the State's objection, defense counsel only argued that he wanted to show that defendant gave a statement asserting that he shot Richardson in self-defense. Defense counsel never argued that he was attempting to use de-

fendant's statement to refresh Investigator Brake's memory. Defendant does not assert nor argue plain error on appeal. Further, based on our review of the record and transcripts, we refrain from invoking Rule 2, as we do not find that reviewing defendant's assignment of error would prevent manifest injustice. Accordingly, defendant's assignment of error is without merit.

## III. PROSECUTOR'S CLOSING ARGUMENT

[2] Defendant next argues that the trial court erred by denying his motion for mistrial based upon the prosecutor's characterization of defense counsel's statement as a concession to murder. We disagree.

"The standard of review for improper closing arguments that[, as in the present case,] provoke timely objection from opposing counsel is whether the trial court abused its discretion by failing to sustain the objection." *State v. Jones*, 355 N.C. 117, 131, 558 S.E.2d 97, 106 (2002). *See also*, *State v. Huffstetler*, 312 N.C. 92, 111, 322 S.E.2d 110, 122 (1984) ("The appellate courts ordinarily will not review the exercise of that discretion unless the impropriety of counsel's remarks is extreme and is clearly calculated to prejudice the jury."). Abuse of discretion occurs when the trial court's decision "was so arbitrary that it could not have been the result of a reasoned decision." *State v. Hayes*, 314 N.C. 460, 471, 334 S.E.2d 741, 747 (1985).

Our North Carolina Supreme Court has held that "[g]enerally, counsel is allowed wide latitude in the scope of jury arguments." *State v. Hill*, 347 N.C. 275, 298, 493 S.E.2d 264, 277 (1997), *cert. denied*, 552 U.S. 1189, 170 L. Ed. 2d 75 (2008). However, "a trial attorney may not make uncomplimentary comments about opposing counsel, and should 'refrain from abusive vituperative, and opprobrious language, or from indulging, in invectives.' " *State v. Sanderson*, 336 N.C. 1, 10, 442 S.E.2d 33, 39 (1994) (citation omitted).

In the case at bar, defendant's motion for mistrial was based upon the prosecutor's closing argument, wherein he stated that he agreed with defense counsel's statement that "a murder occurred out at the Castalia ball field." In responding to defendant's closing argument, the prosecutor did not use "abusive vituperative, and opprobrious language," nor did he indulge in "invectives." As such, we conclude that the prosecutor's statement was made within the wide latitude allowed counsel in closing arguments. Nonetheless, this argument and its effects on the jury are a proper source of investigation by the trial court in consideration of the motion for appropriate relief as discussed below.

On this issue, although we conclude that the trial court did not abuse its discretion by denying defendant's motion for mistrial, we must "remind the prosecutor that the State's interest 'in a criminal prosecution is not that it shall win a case, but that justice shall be done.'" *State v. Matthews*, 358 N.C. 102, 112, 591 S.E.2d 535, 542 (2004) (quoting *Berger v. United States*, 295 U.S. 78, 88, 79 L. Ed. 1314, 1321 (1935)).

## IV. MOTION FOR APPROPRIATE RELIEF

[3] Generally, claims for ineffective assistance of counsel should be considered through a motion for appropriate relief filed in the trial court and not on direct appeal. *State v. Stroud*, 147 N.C. App. 549, 553, 557 S.E.2d 544, 547 (2001). However, a defendant's ineffective assistance of counsel claim "brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing." *State v. Fair*, 354 N.C. 131, 166, 557 S.E.2d 500, 524 (2001).

Asserting a claim for ineffective assistance of counsel requires a defendant to prove that his counsel's conduct fell below an objective standard of reasonableness. *State v. Braswell*, 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985). To meet this burden defendant must satisfy the two-part test set out in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674 (1984).

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687, 80 L. Ed. 2d at 693.

In his third assignment of error, defendant contends that he received ineffective assistance of counsel. Defendant's ineffective assistance of counsel claim is based upon his trial attorney's closing argument, wherein his counsel commented that "a murder occurred out at the Castalia ball field." Defendant argues that this comment was tantamount to an admission of guilt which he did not authorize his attorney to make.

In *State v. Harbison*, 315 N.C. 175, 337 S.E.2d 504 (1985), our Supreme Court held that

> [w]hen counsel admits his client's guilt without first obtaining the client's consent, the client's rights to a fair trial and to put the State to the burden of proof are completely swept away. The practical effect is the same as if counsel had entered a plea of guilty without the client's consent. Counsel in such situations denies the client's right to have the issue of guilt or innocence decided by a jury.

*Id.* at 180, 337 S.E.2d at 507. Where a *Harbison* error occurs, "[an] admission of the defendant's guilt during the closing arguments to the jury is per se prejudicial error." *Id.* at 177, 337 S.E.2d at 505.

With regard to the *per se* prejudicial error standard set forth in *Harbison*, a defendant's counsel's statement must be viewed in context to determine whether the statement was, in fact, a concession of defendant's guilt of a crime, *State v. Hinson*, 341 N.C. 66, 78, 459 S.E.2d 261, 268 (1995) (stating that "nowhere in the record did defense counsel concede that defendant himself committed any crime whatsoever"), or amounted to a *lapsus linguae. State v. Goss*, 361 N.C. 610, 624-25, 651 S.E.2d 867, 876 (2007), *cert. denied* —— U.S. ——, 172 L. Ed. 2d 58 (2008) (stating that a reference which "was accidental and went unnoticed" did not constitute *Harbison* error). Here, due to an equipment malfunction, the record on appeal fails to reveal the context of defense counsel's statement. As such, this Court cannot conduct a meaningful review of the matter to determine whether the statement was actually an impermissible concession of guilt to criminal activity. There is no record of defense counsel's closing argument, and the record before us only contains a portion of the prosecutor's closing argument because the court reporter's equipment malfunctioned during the trial. This Court cannot properly evaluate defendant's remaining claim on direct appeal because we cannot determine the context of the statement upon which the assignment of error is premised. Accordingly, we remand defendant's third assignment of error to the trial court to conduct an evidentiary hearing to determine what, in context, defense counsel actually said during closing arguments.

[4] We further note that defendant also filed a motion for appropriate relief with this Court claiming that he received ineffective assistance of counsel. As the materials before the appellate court are

insufficient to justify a ruling, this motion must be remanded to the trial court for the taking of evidence and a determination of the motion within ninety days from the filing of this opinion. *See* N.C. Gen. Stat. § 15A-1418(b) (2009) (providing that "[w]hen a motion for appropriate relief is made in the appellate division, the appellate court must decide whether the motion may be determined on the basis of the materials before it[] [or] whether it is necessary to remand the case to the trial division for taking evidence or conducting other proceedings"); *see also Matthews*, 356 N.C. 666, 576 S.E.2d 109 (order of the North Carolina Supreme Court remanding defendant's motion for appropriate relief to the trial court where the evidence was insufficient to justify a ruling on defendant's claim of ineffective assistance of counsel). As is required by N.C. Gen. Stat. § 15A-1418(c) (2009), we further order the trial court, at the conclusion of the remand proceeding, to submit its order to this Court for the entry of an appropriate order.

## V.  CONCLUSION

For the reasons stated above, we remand defendant's ineffective assistance of counsel claim and find no prejudicial error.

No error.

Judge McGEE concurs.

Judge ERVIN concurs with a separate opinion.

ERVIN, Judge, concurring.

Although I concur in the Court's opinion, I do so in light of the positions expressed in my separate opinion in *State v. Maready* (No. COA09-171-2) (7 July 2010), which discusses the impact of the decision of the United States Supreme Court in *Florida v. Nixon*, 543 U.S. 175, 125 S. Ct. 551, 160 L. Ed. 2d 565 (2004), on the continued validity of *State v. Harbison*, 315 N.C. 175, 337 S.E.2d 504 (1985), *cert. denied*, 476 U.S. 1123, 106 S. Ct. 1992, 90 L. Ed. 2d 672 (1986). Since *Maready* holds that *Harbison* remains binding on this Court, *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) (holding that "[w]here a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court"), and since the State has not advanced any argu-

ment in this case in reliance on *Nixon*, I believe that I am required to apply *Harbison* in deciding this case. As a result, I concur in the Court's opinion.