BERGER, Judge.
 

 *203
 
 On April 14, 2016, Justin Lee Perry ("Defendant") was convicted by a Mecklenburg County jury of felony fleeing to elude arrest, resisting a public officer, and driving while impaired. Defendant was sentenced as an habitual felon for 90 to 120 months in prison. Defendant has only challenged his driving while impaired conviction on appeal. Specifically, he asserts that (1) the trial court erred when denying his motion to suppress the results of a blood alcohol concentration test; (2) he received ineffective assistance of counsel when his counsel failed to argue the constitutionality of the warrantless blood draw performed on Defendant when counsel was arguing for the suppression of that evidence; and (3) he also received ineffective assistance of counsel when his counsel admitted Defendant's guilt of the driving while impaired charge during closing arguments.
 

 Because Defendant has waived appellate review of his first argument on appeal, we decline to address its merits. For Defendant's first ineffective assistance of counsel claim, because he has failed to show that a different outcome would have been obtained had his counsel made a constitutional argument in favor of suppressing the warrantless blood draw, we grant Defendant no relief. However, for his second ineffective assistance claim, because the trial record does not provide this Court with sufficient facts to make a determination as to Defendant's consent for his counsel to argue his guilt, we must dismiss this part of his appeal without prejudice. Defendant may take this matter up again in the trial court by filing a motion for appropriate relief. Therefore, we find no error in part, and dismiss without prejudice in part.
 

 Factual Background
 

 On May 10, 2014, Mecklenburg County Sheriff Deputy Robert Stokes observed a gold Toyota Camry, driven by a man later identified as Defendant, moving at a high rate of speed on Atando Avenue in Mecklenburg County. Deputy Stokes estimated Defendant's
 
 *569
 
 vehicle was traveling approximately fifty miles per hour in a thirty mile per hour zone. As Defendant's vehicle approached Deputy Stokes, he passed other vehicles on the road, using the center turning lane. Deputy Stokes activated his marked patrol vehicle's lights and siren, and turned to follow Defendant's vehicle.
 

 Deputy Stokes attempted to stop Defendant's vehicle, but he continued, "squeezing in between the median and [other] vehicles that were traveling in the same lane [and] ... pushing [other cars] off to the side [of the road]." Deputy Stokes caught up with Defendant's vehicle "because ... the traffic was slowing him down." However, Defendant was able to
 
 *204
 
 accelerate and Deputy Stokes fell behind. Defendant's vehicle continued at speeds estimated to be between sixty-five and seventy miles per hour, while the speed limit remained thirty miles per hour.
 

 Still traveling at this high rate of speed, Defendant drove through a red light at the intersection of Atando and Statesville Avenues. Defendant then failed to stop at a stop sign at the entrance ramp onto Interstate 77, causing a truck to slam on its brakes to avoid a collision with the subject vehicle. Defendant's vehicle then nearly hit another vehicle that was turning left. Defendant then drove over a concrete island and hit a mound of dirt where it came to a stop.
 

 Defendant exited the vehicle and fled on foot. Deputy Stokes shouted four or five times for Defendant to stop running, a command Defendant failed to follow. Deputy Stokes continued to pursue Defendant into a residential neighborhood where he lost sight of Defendant. Deputy Stokes soon found Defendant lying under a piece of plywood "face down," "breathing heavily," and "sweating profusely."
 

 Deputy Stokes ordered Defendant to get up, but he remained on the ground. Deputy Stokes handcuffed Defendant and "pulled him out to an open area[, out from under the plywood] ... so he [could] get more oxygen." Defendant was initially unresponsive, but suddenly "jumped up" and said, "I'm ready to go. Let's go." Defendant walked a short distance before passing out again. Defendant was transported to the emergency room of a local hospital.
 

 In the hospital, Defendant remained unresponsive. He periodically drifted in and out of consciousness and would suddenly state that he had been poisoned and "[didn't] remember anything," and that "he drank a whole lot." Because Deputy Stokes suspected Defendant of driving while impaired, he read Defendant his rights, filled out "a rights form," and directed a nurse to draw Defendant's blood so that it could be analyzed for its blood alcohol concentration ("BAC").
 

 Procedural History
 

 The State timely provided Defendant with notice of its intent to introduce the results of its analysis of Defendant's blood, and its BAC findings, as evidence at trial. Defense counsel made no pretrial motion to suppress the BAC results.
 

 At a motions hearing before trial, defense counsel notified the trial court that he may address certain "bad acts" regarding Defendant's driving in his opening statement. Counsel requested that the trial court address "any kind of acknowledgement or reference by us to wrongdoing
 
 *205
 
 [that] may require for us to protect [Defendant's] rights [so that counsel could] present the defense ... we have strategized." Defense counsel also indicated that these comments would likely reference Defendant's driving and implicate Defendant's fleeing to elude charge. The trial court conducted a colloquy with Defendant addressing these possible admissions regarding his driving. Defendant acknowledged that he had previously discussed with counsel the possible admissions and how those facts related to Defendant's overall trial strategy. Defendant consented to these disclosures for the purposes of opening arguments. Following its colloquy with Defendant, the trial court found that:
 

 Defendant has heard from his attorney relating to the intent to discuss his driving behavior in the opening and they have discussed the dangers and advantages of possibly providing that information early on. And based on discussion with counsel, the Defendant has, without undue influence from anyone else, made the decision
 
 *570
 
 to allow his attorney to make those statements.
 

 During trial, Deputy Stokes testified to the circumstances surrounding Defendant's blood draw while at the hospital. Defense counsel objected to the admission of any evidence gained from the blood draw and moved for its suppression. The trial court overruled the objection and denied the motion to suppress. A State Bureau of Investigation ("SBI") lab analyst testified to the results of the tests of Defendant's blood sample, and to the SBI lab report giving Defendant's BAC. This evidence was admitted without objection.
 

 Defendant was found guilty of felony fleeing to elude, resisting a public officer, and driving while impaired. Defendant admitted to attaining habitual felon status. Defendant gave timely notice of appeal in open court.
 

 Analysis
 

 I.
 
 Motion to Suppress
 

 Defendant asserts that the trial court erred in summarily denying his motion to suppress evidence obtained from the warrantless blood draw taken from Defendant during his hospitalization. This motion to suppress was made during trial when the State sought to introduce the blood draw evidence.
 

 However, this Court is procedurally barred from addressing the merits of Defendant's argument because the basis for the objection given during trial is not the basis of Defendant's argument on appeal. At trial,
 
 *206
 
 defense counsel objected to the introduction of evidence resulting from the warrantless blood draw because Deputy Stokes had not complied with the requirements of
 
 N.C. Gen. Stat. § 20-16.2
 
 when he failed to arrest Defendant for driving while impaired before he drew Defendant's blood.
 

 On appeal, however, Defendant states a different argument for the suppression of the blood draw evidence. In his appeal, Defendant merely mentions
 
 N.C. Gen. Stat. § 20-16.2
 
 once in an argument heading, but substantively argues that "[t]he drawing of the blood violated [his] Fourth Amendment rights against unreasonable searches and seizures as set out by the Constitution of North Carolina and the Constitution of the United States." Specifically, Defendant argues that (1) "taking a blood sample is a search governed by the Fourth Amendment [of the U.S. Constitution]"; (2) the North Carolina Supreme Court has held that a "search warrant must be issued before a blood sample can be obtained, unless probable cause and exigent circumstances" exist; and (3) the U.S. Supreme Court ha[s] previously held that "the natural dissipation of alcohol from the blood stream does not always indicate an exigency to justify warrantless taking of a blood sample."
 

 Exceptions to the admission of evidence must generally be preserved by counsel with an objection made at the time evidence is admitted. N.C. Gen. Stat. § 8C-1, Rule 103 ; N.C.R. App. P. 10(a)(1). "In order to preserve a question for appellate review, a party must have presented the trial court with a timely request, objection or motion, stating the specific grounds for the ruling sought if the specific grounds are not apparent."
 
 State v. Eason
 
 ,
 
 328 N.C. 409
 
 , 420,
 
 402 S.E.2d 809
 
 , 814 (1991) (citing N.C.R. App. P. 10(b)(1) ).
 

 The specific grounds for objection raised before the trial court must be the theory argued on appeal because "the law does not permit parties to swap horses between courts in order to get a better mount in the [appellate court]."
 
 Weil v. Herring
 
 ,
 
 207 N.C. 6
 
 , 10,
 
 175 S.E. 836
 
 , 838 (1934). Furthermore, when counsel objects to the admission of evidence on only one ground, he or she fails to preserve the additional grounds for appeal, unless plain error is specifically and distinctly argued on appeal.
 
 State v. Frye
 
 ,
 
 341 N.C. 470
 
 , 496,
 
 461 S.E.2d 664
 
 , 677 (1995) (citing N.C.R. App. P. 10(c)(4) ). Defendant has not argued plain error.
 

 "[W]here a theory argued on an appeal was not raised before the trial court, the argument is deemed waived on appeal."
 
 State v. Hernandez
 
 ,
 
 227 N.C.App. 601
 
 , 608,
 
 742 S.E.2d 825
 
 , 829 (2013) (citations, quotation marks, and brackets omitted). "It is well settled that constitutional matters that are not 'raised and passed upon' at trial will not be reviewed for
 
 *207
 
 the first time on appeal."
 
 State v. Garcia
 
 ,
 
 358 N.C. 382
 
 , 410,
 
 597 S.E.2d 724
 
 , 745 (2004) (citing
 
 *571
 

 State v. Watts
 
 ,
 
 357 N.C. 366
 
 , 372,
 
 584 S.E.2d 740
 
 , 745 (2003),
 
 cert. denied
 
 ,
 
 541 U.S. 944
 
 ,
 
 124 S.Ct. 1673
 
 ,
 
 158 L.Ed.2d 370
 
 (2004) ). Therefore, we do not reach the merits of Defendant's argument on this issue, and his assignment of error is overruled.
 

 II.
 
 Ineffective Assistance of Counsel
 

 In Defendant's next assignment of error, he argues that his trial counsel violated his Sixth and Fourteenth Amendment rights to the effective assistance of counsel. Specifically, Defendant contends that his counsel rendered ineffective assistance when he (1) failed to argue that the warrantless blood draw and all subsequent evidence obtained from his blood was seized in violation of the United States and North Carolina Constitutions; and (2) admitted Defendant's guilt to the driving while impaired charge during closing arguments without first obtaining Defendant's consent.
 

 "On appeal, this Court reviews whether a defendant was denied effective assistance of counsel de novo."
 
 State v. Wilson
 
 ,
 
 236 N.C.App. 472
 
 , 475,
 
 762 S.E.2d 894
 
 , 896 (2014). Under the Sixth and Fourteenth Amendments of the United States Constitution and Article 1, Sections 19 and 23 of the North Carolina Constitution, "[a] defendant's right to counsel includes the right to the effective assistance of counsel."
 
 State v. Braswell
 
 ,
 
 312 N.C. 553
 
 , 561,
 
 324 S.E.2d 241
 
 , 247 (1985) (citation omitted). In
 
 Braswell
 
 , our Supreme Court "expressly adopt[ed] the test set out in
 
 Strickland v. Washington
 
 [,
 
 466 U.S. 668
 
 ,
 
 104 S.Ct. 2052
 
 ,
 
 80 L.Ed.2d 674
 
 (1984),] as a uniform standard to be applied to measure ineffective assistance of counsel under the North Carolina Constitution."
 
 Braswell
 
 ,
 
 312 N.C. at 562-63
 
 ,
 
 324 S.E.2d at 248
 
 .
 

 On appeal, a defendant must show that his counsel's conduct "fell below an objective standard of reasonableness" to prevail.
 
 Strickland
 
 ,
 
 466 U.S. at 688
 
 ,
 
 104 S.Ct. at 2064
 
 ,
 
 80 L.Ed.2d at 693
 
 . To show that, the defendant must satisfy a two-part test.
 

 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
 

 Id.
 

 at 687
 
 ,
 
 104 S.Ct. at 2064
 
 ,
 
 80 L.Ed.2d at 693
 
 .
 

 *208
 
 For the error of counsel, even an objectively unreasonable error, to warrant the reversal of a conviction, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."
 
 Id
 
 . at 694,
 
 104 S.Ct. at 2068
 
 ,
 
 80 L.Ed.2d at 698
 
 . "That requires a substantial, not just conceivable, likelihood of a different result."
 
 Cullen v. Pinholster
 
 ,
 
 563 U.S. 170
 
 , 189,
 
 131 S.Ct. 1388
 
 , 1403,
 
 179 L.Ed.2d 557
 
 , 575 (2011) (citations and quotation marks omitted). In making this determination, this Court "must consider the totality of the evidence before the judge or jury."
 
 Strickland,
 

 466 U.S. at 695
 
 ,
 
 104 S.Ct. at 2069
 
 ,
 
 80 L.Ed.2d at 698
 
 .
 

 A.
 
 Motion to Suppress Blood Draw Evidence
 

 Defendant argues that his counsel gave ineffective assistance when he failed to assert that the seizure of Defendant's blood was unconstitutional when moving the trial court to suppress this evidence. The results of the BAC test conducted on Defendant's blood were consequently admitted into evidence at trial. Defendant ascribes prejudice to the admission of this evidence because it established a BAC of 0.15-nearly double the limit prohibited-and because BAC was "necessary to prove driving under the influence" as defined by
 
 N.C. Gen. Stat. § 20-138.1
 
 . Defendant, therefore, argues that he is entitled to a new trial.
 

 Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious
 
 *572
 
 and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.
 

 Kimmelman v. Morrison
 
 ,
 
 477 U.S. 365
 
 , 375,
 
 106 S.Ct. 2574
 
 , 2583,
 
 91 L.Ed.2d 305
 
 , 319 (1986). However,
 

 a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.
 

 Braswell
 
 ,
 
 312 N.C. at 563
 
 ,
 
 324 S.E.2d at 248
 
 (citation omitted).
 

 *209
 
 For Defendant to prevail on this assertion of error, he must prove prejudice.
 
 Strickland
 
 ,
 
 466 U.S. at 693
 
 ,
 
 104 S.Ct. at 2067-68
 
 ,
 
 80 L.Ed.2d at 697
 
 . Defendant must show a reasonable probability that, had the trial court suppressed the BAC test results, Defendant would not have been found guilty of driving while impaired. Furthermore, the likelihood of being found not guilty of driving while impaired must be "substantial, not just conceivable."
 
 Cullen
 
 ,
 
 563 U.S. at 189
 
 ,
 
 131 S.Ct. at 1403
 
 ,
 
 179 L.Ed.2d at 575
 
 (citation and quotation marks omitted).
 

 To determine whether Defendant had a substantial likelihood of obtaining a not guilty verdict for his driving while impaired charge, we look to the statute proscribing impaired driving.
 
 State v. Taylor
 
 ,
 
 165 N.C.App. 750
 
 , 757,
 
 600 S.E.2d 483
 
 , 489 (2004) ("
 
 N.C. Gen. Stat. § 20-138.1
 
 governs the offense of impaired driving...."). In relevant part, it provides:
 

 (a) Offense.-A person commits the offense of impaired driving if he drives any vehicle upon any highway, any street, or any public vehicular area within this State:
 

 (1) While under the influence of an impairing substance; or
 

 (2) After having consumed sufficient alcohol that he has, at any relevant time after the driving, an alcohol concentration of 0.08 or more. The results of a chemical analysis shall be deemed sufficient evidence to prove a person's alcohol concentration[.]
 

 N.C. Gen. Stat. § 20-138.1
 
 (a) (2016). "Thus, the acts of driving while under the influence of an impairing substance and driving with an alcohol concentration of .08 are two separate, independent and distinct ways by which one can commit the single
 
 offense
 
 of driving while impaired."
 
 Taylor
 
 ,
 
 165 N.C.App. at 757
 
 ,
 
 600 S.E.2d at 489
 
 (citation, quotation marks, and brackets omitted) (emphasis in original). "In fact, the State may prove DWI where the [BAC] is entirely unknown or less than .08."
 

 Id.
 

 (citation, quotation marks, and brackets omitted). Provided a determination of impairment is not based solely on the odor of alcohol, "[t]he opinion of a law enforcement officer ... has consistently been held sufficient evidence of [a defendant's] impairment."
 

 Id.
 

 (citation and quotation marks omitted).
 

 In this case, Deputy Stokes testified that Defendant "lost control of his bodily or mental faculties, or both, to such an extent that [he was] ... appreciably impair[ed]." He based this opinion on his observations
 
 *210
 
 that Defendant was driving approximately twenty miles over the speed limit, driving in the center turning lane, using his car to push other vehicles off the road, accelerating away from Deputy Stokes' marked patrol vehicle during pursuit, and running a stoplight and a stop sign before crashing his car into a mound of dirt. After he had wrecked his vehicle, Defendant fled the scene on foot, ignored multiple verbal commands to stop, and was eventually located where he had passed out under a piece of plywood. Upon finding Defendant under the plywood, Deputy Stokes testified that Defendant was "unresponsive," had "labored breathing," was "sweating profusely," and "smelled ... [and] reeked of alcohol" to the extent that Deputy Stokes could smell the "strong odor of alcohol coming from [Defendant's] breath" when "standing over him." Finally, while receiving treatment in the emergency room, Defendant lapsed in and out of consciousness and made
 
 *573
 
 several unprompted statements that he did not "remember anything" and that "he drank a whole lot." Deputy Stokes testified he "believe[d] that alcohol was a contributing factor to the events that led up to that day['s incident]."
 

 In light of this testimony, the State introduced overwhelming evidence of appreciable impairment. Because this was sufficient to find Defendant guilty of the offense of driving while impaired, "the State was not required to establish [BAC] to prove that [D]efendant was driving while impaired."
 
 Taylor
 
 ,
 
 165 N.C.App. at 757
 
 ,
 
 600 S.E.2d at 489
 
 . As a result, Defendant has failed to show "that there is a reasonable probability that the verdict would have been different absent the excludable evidence" and has, thus, failed to "demonstrate actual prejudice."
 
 See
 

 Kimmelman
 
 ,
 
 477 U.S. at 375
 
 ,
 
 106 S.Ct. at 2583
 
 ,
 
 91 L.Ed.2d at 319
 
 . Therefore, we "dispose of [this] ineffectiveness claim on the ground of lack of sufficient prejudice."
 
 Braswell
 
 ,
 
 312 N.C. at 563
 
 ,
 
 324 S.E.2d at 248
 
 .
 

 B.
 
 Counsel's Admission of Guilt
 

 Defendant also argues that his counsel gave ineffective assistance when, without his consent, Defendant's counsel informed the jury during closing arguments that Defendant was driving while impaired. Defendant argues this entitles him to a new trial. Upon review of the trial transcript and record, we find the record insufficient to determine whether the error in question occurred. We therefore dismiss this assignment of error without prejudice to Defendant's rights.
 

 "Generally, claims for ineffective assistance of counsel should be considered through a motion for appropriate relief filed in the trial court and not on direct appeal."
 
 State v. Mills
 
 ,
 
 205 N.C.App. 577
 
 , 586,
 
 696 S.E.2d 742
 
 , 748 (2010) (citing
 
 *211
 

 State v. Stroud
 
 ,
 
 147 N.C.App. 549
 
 , 553,
 
 557 S.E.2d 544
 
 , 547 (2001) );
 
 see also
 

 State v. Dockery
 
 ,
 
 78 N.C.App. 190
 
 , 192,
 
 336 S.E.2d 719
 
 , 721 (1985) ("The accepted practice is to raise claims of ineffective assistance of counsel in post-conviction proceedings, rather than direct appeal.");
 
 State v. Ware
 
 ,
 
 125 N.C.App. 695
 
 , 697,
 
 482 S.E.2d 14
 
 , 16 (1997) (dismissing defendant's appeal because issues could not be determined from the record on appeal and stating that "[t]o properly advance these arguments, defendant must move for appropriate relief pursuant to G.S. 15A-1415"). Our Supreme Court has instructed that "should the reviewing court determine that [ineffective assistance of counsel] claims have been prematurely asserted on direct appeal, it shall dismiss those claims without prejudice to the defendant's right to reassert them during a subsequent [motion for appropriate relief] proceeding."
 
 State v. Fair
 
 ,
 
 354 N.C. 131
 
 , 167,
 
 557 S.E.2d 500
 
 , 525 (2001).
 

 In order to determine whether a defendant is in a position to adequately raise an ineffective assistance of counsel claim, we stress this Court is limited to reviewing this assignment of error only on the record before us, without the benefit of information provided by defendant to trial counsel, as well as defendant's thoughts, concerns, and demeanor, that could be provided in a full evidentiary hearing on a motion for appropriate relief.
 

 Stroud
 
 ,
 
 147 N.C.App. at 554
 
 , 557 S.E.2d at 547 (citation, quotation marks, and brackets omitted).
 

 As stated above, Defendant must show that his counsel's conduct "fell below an objective standard of reasonableness" to prevail.
 
 Strickland
 
 ,
 
 466 U.S. at 688
 
 ,
 
 104 S.Ct. at 2064
 
 ,
 
 80 L.Ed.2d at 693
 
 . To show this, Defendant must prove "counsel's performance was deficient," and also prove "the deficient performance prejudiced the defense."
 
 Id
 
 . at 687,
 
 104 S.Ct. at 2064
 
 ,
 
 80 L.Ed.2d at 693
 
 . Furthermore, in determining this objective standard of reasonableness,
 

 [b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.
 

 *574
 

 Strickland
 
 ,
 
 466 U.S. at 689
 
 ,
 
 104 S.Ct. at 2065
 
 ,
 
 80 L.Ed.2d at 694-95
 
 (citations omitted).
 

 *212
 
 However, our Supreme Court held in
 
 State v. Harbison
 
 ,
 
 315 N.C. 175
 
 ,
 
 337 S.E.2d 504
 
 (1985), that
 

 [w]hen counsel admits his client's guilt without first obtaining the client's consent, the client's rights to a fair trial and to put the State to the burden of proof are completely swept away. The practical effect is the same as if counsel had entered a plea of guilty without the client's consent. Counsel in such situations denies the client's right to have the issue of guilt or innocence decided by a jury.
 

 Id
 
 . at 180,
 
 337 S.E.2d at 507
 
 (citation omitted). While an "admission of the defendant's guilt during the closing arguments to the jury is per se prejudicial error,"
 
 Id
 
 . at 177,
 
 337 S.E.2d at 505
 
 , "a defendant's counsel's statement must be viewed in context to determine whether the statement was, in fact, a concession of defendant's guilt of a crime."
 
 Mills
 
 ,
 
 205 N.C.App. at 587
 
 ,
 
 696 S.E.2d at 748-49
 
 (citation omitted).
 

 Furthermore, because a
 
 Harbison
 
 error only occurs when counsel's admission of guilt is not consented to by Defendant,
 
 Harbison
 
 ,
 
 315 N.C. at 180
 
 ,
 
 337 S.E.2d at 507
 
 , "[f]or us to conclude that a defendant permitted his counsel to concede his guilt ..., the facts must show, at a minimum, that defendant
 
 knew
 
 his counsel [was] going to make such a concession."
 
 State v. Matthews
 
 ,
 
 358 N.C. 102
 
 , 109,
 
 591 S.E.2d 535
 
 , 540 (2004) (emphasis in original). Our Supreme Court has "previously declined to set out what constitutes an acceptable consent by a defendant in this context."
 
 State v. McDowell
 
 ,
 
 329 N.C. 363
 
 , 387,
 
 407 S.E.2d 200
 
 , 213 (1991). "
 
 Harbison
 
 and [
 
 State v.
 
 ]
 
 Matthews
 
 clearly indicate that the trial court must be satisfied that, prior to any admissions of guilt at trial by a defendant's counsel, the defendant must have given knowing and informed consent, and the defendant must be aware of the potential consequences of his decision."
 
 State v. Maready
 
 ,
 
 205 N.C.App. 1
 
 , 7,
 
 695 S.E.2d 771
 
 , 776,
 
 writ denied, review denied
 
 ,
 
 364 N.C. 329
 
 ,
 
 701 S.E.2d 247
 
 (2010).
 

 In this case, Defendant was tried for and convicted of three offenses at trial: felony fleeing to elude arrest, resisting a public officer, and driving while impaired. When speaking to the jury during closing arguments, Defendant's counsel reviewed all elements needed to convict his client of felony fleeing to elude arrest and resisting a public officer. Then, when addressing the driving while impaired charge, he said, "I don't have much to say to you 'cause, again, I want to not play with you. Driving while impaired. Drives vehicle .08 or higher. I don't have much to say. Except why was he driving while impaired?"
 

 *213
 
 "[U]nder the circumstances, [this choice of] action 'might be considered sound trial strategy[ ]' [as] [t]here are countless ways to provide effective assistance in any given case[ ]" and this "conduct [may very well] fall[ ] within the wide range of reasonable professional assistance."
 
 Strickland
 
 ,
 
 466 U.S. at 689
 
 ,
 
 104 S.Ct. at 2065
 
 ,
 
 80 L.Ed.2d at 694-95
 
 (citations omitted). However, there is nothing in the record by which we can definitively state that "[D]efendant
 
 knew
 
 his counsel [was] going to make such a concession."
 
 Matthews
 
 , 358 N.C. at 109,
 
 591 S.E.2d at 540
 
 (emphasis in original).
 

 Therefore, as this Court is unable to find ineffective assistance of counsel on the face of the record, and because we are unable to find that Defendant consented to the admission of guilt made by his counsel in closing arguments, we dismiss this assignment of error without prejudice to Defendant's right to allow for him to file a motion for appropriate relief in the trial court.
 

 Conclusion
 

 For the reasons stated above, Defendant has waived review of the trial court's denial of his motion to suppress blood draw analysis evidence because his argument presented to the trial court was substantively different from his argument made on appeal. We find no ineffective assistance of counsel from his counsel's failure to prevail on this motion to suppress, because Defendant has failed to prove prejudice from this alleged error. Because we have found the record insufficient to determine whether Defendant is entitled to the relief sought based upon his counsel's admission of Defendant's guilt during closing
 
 *575
 
 arguments, we dismiss this assignment of error without prejudice.
 

 NO ERROR.
 

 Chief Judge MCGEE and Judge DAVIS concur.