IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-687

No. COA21-761

Filed 18 October 2022

Robeson County, No. 18CRS055211

STATE OF NORTH CAROLINA

v.

LEQUIRE WATSON

Appeal by Defendant from judgment entered 20 May 2021[1] by Judge James G. Bell in Robeson County Superior Court. Heard in the Court of Appeals 24 August 2022.

*Attorney General Joshua H. Stein, by Assistant Attorney General Robert T. Broughton, for the State-Appellee.*

*Stam Law Firm, by R. Daniel Gibson, for Defendant-Appellant.*

COLLINS, Judge.

Defendant Lequire Watson appeals from judgment entered upon a jury verdict of guilty of driving while impaired. Defendant argues he is entitled to a new trial because the trial court erroneously admitted a toxicology report without proper authentication, and because the trial court erroneously allowed the arresting officer

---

[1] The judgment is dated 18 May 2021, and Defendant's notice of appeal refers to the judgment as dated 18 May 2021. However, the judgment was file stamped on 20 May 2021.

to testify to Defendant's specific blood alcohol concentration. Defendant is not entitled a new trial because the toxicology report was properly admitted as the basis of the testifying expert's opinion, and the admission of the officer's testimony was harmless error.

## I.    Procedural History

Defendant was arrested and charged with driving while impaired on 27 September 2018. Prior to trial, Defendant filed a "notice of objection to the introduction during trial of any affidavits and written statements" regarding the chemical analysis of Defendant's blood. The State subsequently gave notice of its intent to introduce a toxicology report containing the results of a chemical analysis of a blood sample obtained from Defendant on the night of his arrest. Also before trial, the analyst who performed the chemical analysis and prepared the toxicology report separated from the State Bureau of Investigation ("SBI"), and the State filed a notice to substitute the agent who conducted the administrative and technical review of Defendant's case as its forensic toxicology expert. Defendant objected to introducing the toxicology report without the original analyst's testimony.

After a trial, the jury found Defendant guilty of driving while impaired and the trial court sentenced Defendant to 12 months' imprisonment, suspended for 12 months' supervised probation and a split sentence of 15 days in jail. Defendant timely appealed.

## II.    Factual Background

On the evening of 27 September 2018, Officer Steven Jacobs stopped Defendant because portions of Defendant's license plate were covered by the license plate frame, in violation of N.C. Gen. Stat. § 20-63.[2]  During the stop, Jacobs noted that Defendant's speech was slurred, his eyes were red and glassy, and his pants were wet around the crotch area, leading Jacobs to suspect that Defendant was impaired. Defendant also appeared to have trouble finding his glasses, which were located on top of his head.

Jacobs had Defendant to step out of the car.  Jacobs administered a horizontal gaze and nystagmus ("HGN") test.  When asked about the HGN test at trial, Jacobs stated that he administers the test looking for six clues that indicate impairment, and that Defendant displayed all six.  When asked about the significance of observing all six clues, Jacobs stated, over Defendant's objection, "[t]here's a probability that he's going to be a .08 or higher, 80% according to the test that was done."  Jacobs also administered a portable breath test to Defendant, which indicated the presence of alcohol on Defendant's breath.  Jacobs did not administer other standard roadside field sobriety tests because Defendant said he had nerve damage in his knees.  Based on his observations of Defendant and the roadside field sobriety test results, Jacobs

---

[2] N.C. Gen. Stat. § 20-63(g) proscribes covering the State name on a license plate.

arrested Defendant for driving while impaired.

¶ 6 After Defendant was arrested, he was taken to an intoxilyzer room where Jacobs offered him a breathalyzer test; Defendant refused the test. Jacobs obtained and executed a warrant to collect Defendant's blood. The blood sample was collected by an emergency medical services supervisor and sent to the SBI's crime lab in Raleigh for chemical analysis. On 28 January 2020, Agent Kathleen Barra analyzed Defendant's blood sample using a headspace gas chromatograph, determined that the blood alcohol concentration of the sample was 0.27 grams per 100 milliliters, and prepared a report containing those results. Agent Megan Simms conducted an administrative and technical review of Barra's work.

¶ 7 At trial, Simms was admitted as an expert witness in the field of forensic toxicology. Simms testified that, after reviewing Barra's report, Simms formed an independent opinion that the sample's blood alcohol concentration was 0.27 grams of alcohol per hundred milliliters. Barra's report was introduced into evidence over Defendant's objection.

### III.    Discussion

**A. Standard of Review**

¶ 8 Defendant's issues on appeal involve the trial court's alleged misinterpretation or misapplication of the rules of evidence governing expert testimony which we review de novo. *State v. Younts*, 254 N.C. App. 581, 585, 803 S.E.2d 641, 645 (2017).

## B. Admissibility of the Toxicology Report

¶ 9      Defendant first argues that "because no expert with knowledge of how the toxicology tests were performed testified, the trial court erred in admitting the toxicology reports." (capitalization omitted).

¶ 10      Pursuant to North Carolina Rule of evidence 703, which governs expert testimony,

> [t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

N.C. Gen. Stat. § 8C-1, Rule 703 (2021). "An expert may properly base his or her opinion on tests performed by another person, if the tests are of the type reasonably relied upon by experts in the field." *State v. Fair*, 354 N.C. 131, 162, 557 S.E.2d 500, 522 (2001). Such tests are "admissible to show the basis for an expert's opinion, even if the information [contained in the tests] would otherwise be inadmissible hearsay." *State v. Daughtry*, 340 N.C. 488, 511, 459 S.E.2d 747, 758 (1995). "Allowing disclosure of the bases of an expert's opinion 'is essential to the factfinder's assessment of the credibility and weight to be given to it.'" *State v. Golphin*, 352 N.C. 364, 467, 533 S.E.2d 168, 235 (2000) (quoting *State v. Jones*, 322 N.C. 406, 412, 368 S.E.2d 844, 847 (1988)).

¶ 11        At trial, Simms was tendered and admitted as an expert in the field of forensic toxicology.[3]  Simms testified that she was the administrative and technical reviewer for Defendant's case, and that part of her responsibilities included analyzing the data presented in Barra's report.  Simms described in detail the scientific method used to analyze blood samples, testified that the method was the "gold standard of toxicology," and testified that the described method was properly applied to the facts in this case to generate the test results.  Simms testified that she reviewed Barra's report and formed an independent opinion that the blood alcohol concentration of Defendant's blood sample was 0.27 grams of alcohol per hundred milliliters.  Under Rule 703, Barra's toxicology report was admissible at trial to show the basis of Simms' opinion.  *See State v. Jones*, 322 N.C. 406, 411, 368 S.E.2d 844, 847 (1988) ("[U]nder Rule 703 . . . a testifying expert can reasonably rely on the opinion of an out of court expert and can testify to the content of that opinion.").

¶ 12        We note that, because the evidence was admissible as the basis of Simms' opinion, but not as substantive evidence, Defendant was entitled upon request to an instruction limiting its consideration to its proper scope.  N.C. Gen. Stat. § 8C-1, Rule 105 (2021).  However, Defendant made only a general objection and did not request a

_____

[3] Defendant objected to Simms' testimony on the ground that she was not the analyst who performed the original blood analysis.  Defendant did not object to Simms' qualification as a forensic toxicology expert.

limiting instruction. "The admission of evidence which is competent for a restricted purpose will not be held error in the absence of a request by the defendant for limiting instructions." *Jones*, 322 N.C. at 414, 368 S.E.2d at 848; *State v. Maccia*, 311 N.C. 222, 228-29, 316 S.E. 2d 241, 245 (1984).

¶ 13        Further, we note there was no Confrontation Clause violation here as Simms was available for cross-examination. *See State v. Delaney*, 171 N.C. App. 141, 141, 613 S.E.2d 699, 700 (2005) ("The admission into evidence of expert opinion based upon information not itself admissible into evidence does not violate the Sixth Amendment guarantee of the right of an accused to confront his accusers where the expert is available for cross-examination." (citation omitted)). Defendant had ample opportunity to, and did, cross-examine Simms about the basis of her expert opinion testimony. As a result, any credibility issues regarding the basis of Simms' expert opinion testimony were thoroughly explored before the jury.

¶ 14        Defendant argues that N.C. Gen. Stat. § 20-139.1(c1) required Barra to testify to the results of her chemical analysis for her report to be admissible. Defendant specifically argues that because he objected to the State's notice of intent to introduce Barra's report into evidence, Barra was required to testify. Defendant misapprehends the law.

¶ 15        Pursuant to N.C. Gen. Stat. § 20-139.1(c1), "[t]he results of a chemical analysis of blood or urine reported by the North Carolina State Crime Laboratory . . . are admissible as evidence . . . in any court, without further authentication and without the testimony

of the analyst." N.C. Gen. Stat. § 20-139.1(c1) (2021). The provisions of this subsection can only be utilized in cases tried in superior court if (1) the State gives the defendant proper notice of its intention to introduce the report into evidence, and (2) the defendant fails to properly object. *See Id.* § 20-139.1(c1)(1),(2). However, "[u]pon filing a timely objection, the admissibility of the report shall be determined and governed by the appropriate rules of evidence." *Id.* § 20-139.1(c1).

Here, the State properly notified Defendant of its intent to introduce Barra's report into evidence, and Defendant timely objected. Thus, under the statute, the rules of evidence govern the report's admissibility. As analyzed above, under Rule of Evidence 703, the report was admissible as the basis of Simms' expert opinion. Defendant's argument lacks merit.

**C. Officer Jacobs' Testimony**

Defendant next argues that the trial court erred by allowing Jacobs to testify to his opinion of Defendant's blood alcohol concentration level based on the results of an HGN test.

Rule of Evidence 702 provides that "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion." N.C. Gen. Stat. § 8C-1, Rule 702(a) (2021). An officer trained to administer HGN tests may give

expert testimony on the results of an HGN test but may testify "solely on the issue of impairment and not on the issue of specific alcohol concentration level." *Id.* § 8C-1, Rule 702(a1).

At trial, Jacobs testified that he had successfully completed training in administering HGN tests, and that he had administered an HGN test to Defendant. When asked the significance of the HGN test results, Jacobs testified, over Defendant's objection, "[t]here's a probability that he's going to be a .08 or higher, 80% according to the test that was done." Jacobs' testimony as to Defendant's specific alcohol concentration level relating to the HGN test violated 702(a1) and was erroneously admitted into evidence. *See State v. Torrence*, 247 N.C. App. 232, 237, 786 S.E.2d 40, 43 (2016).

Although the testimony was erroneously admitted, Defendant has failed to show that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a) (2021).

Pursuant to N.C. Gen. Stat. § 20-138.1, a person is driving while impaired

> if he drives any vehicle upon any highway, any street, or any public vehicular area within this State:
>
> > (1) While under the influence of an impairing substance; or
> >
> > (2) After having consumed sufficient alcohol that he has, at any relevant time after the driving, an

> alcohol concentration of 0.08 or more. The results of a chemical analysis shall be deemed sufficient evidence to prove a person's alcohol concentration[.]

N.C. Gen. Stat. § 20-138.1(a) (2018). Driving while under the influence of an impairing substance under subsection (a)(1) and driving with an alcohol concentration of 0.08 or more under subsection (a)(2) are separate, independent, and distinct ways by which one can commit the single offense of driving while impaired. *State v. Perry*, 254 N.C. App. 202, 209, 802 S.E.2d 566, 572 (2017). Thus, the jury may convict a person of driving while impaired for driving while under the influence of an impairing substance without proof of the person's blood alcohol concentration. N.C. Gen. Stat. § 20-138.1(a)(1). The jury may independently convict a person of driving while impaired for driving with an alcohol concentration of 0.08 or more if the State proves that the person's blood alcohol concentration was 0.08 or more. *Id.* § 20-138.1(a)(2). In this case, there was overwhelming evidence to convict Defendant under either prong, even absent Jacobs' erroneously admitted testimony.

### 1. *Driving while under the influence of an impairing substance*

A person is under the influence of an impairing substance if "his physical or mental faculties, or both, [are] appreciably impaired by an impairing substance." N.C. Gen. Stat. § 20-4.01(48b) (2018). Alcohol is an "impairing substance." *Id.* § 20-4.01(14a) (2018). "The effect must be appreciable, that is, sufficient to be recognized and estimated, for a proper finding that defendant was impaired." *State v.*

*Harrington*, 78 N.C. App. 39, 45, 336 S.E.2d 852, 855 (1985). "Provided a determination of impairment is not based solely on the odor of alcohol, the opinion of a law enforcement officer . . . has consistently been held sufficient evidence of a defendant's impairment." *Perry*, 254 N.C. App. at 209, 802 S.E.2d at 572 (quotation marks, brackets, and citation omitted). Additionally, a defendant's refusal to submit to chemical analysis, such as a breathalyzer, is admissible as substantive evidence of impairment. *State v. McGaha*, 274 N.C. App. 232, 236, 851 S.E.2d 659, 662 (2020) (citing N.C. Gen. Stat. § 20-139.1(f)).

¶ 23    At trial, the State presented the following evidence that Defendant was under the influence of an impairing substance:

¶ 24    Jacobs testified that, during the stop Defendant "had slurred speech," and that "most people that have been consuming alcohol their speech seemed to get slurred after the more that they consumed." Jacobs also testified that Defendant had "red, glassy eyes," which is "common in most people that's been drinking or consuming alcohol." Jacobs testified that Defendant had a wet spot on his pants "as if he urinated himself already," and that Defendant "was looking for his glasses, but his glasses was on top of his head while he – the whole time he was looking for them." Additionally, Jacobs administered two portable breath tests that indicated the presence of alcohol in Defendant's breath. Finally, Defendant refused to submit to a breathalyzer after his arrest.

¶ 25        Defendant testified that he disagreed with Jacobs' opinion that his speech was slurred and that his eyes were red and glassy, stating "I mean [Jacobs] might have thought [my speech] was slurred, but yes, I would disagree.  I mean it might be a little slurred now, but it's not due to anything other than my dentures," and "[my eyes are] just as white as they've ever been. . . . I don't think there's any difference right now today from that time.  I don't know what you would call glassy or what-have-you.  But there's no redness, but you might call them glassy."  Defendant also testified that the wet spot on his pants was possibly water or Gatorade, stating that "[i]t had to be the only thing.  I've never peed myself in the last 50 years."  Even crediting these explanations, as the jury may have done, the remaining uncontroverted evidence of Defendant's impairment is overwhelming.

### 2. *Driving with an alcohol concentration of 0.08 or more*

¶ 26        The results of a chemical analysis are sufficient to prove a person's blood alcohol concentration.  N.C. Gen. Stat. § 20-138.1(a)(2).  Simms testified that, in her expert opinion, based on the results of a chemical analysis, Defendant's blood contained 0.27 grams of alcohol per 100 milliliters.  Additionally, because Defendant did not request a limiting instruction regarding Barra's report, the report was substantive evidence that Defendant's blood contained 0.27 grams of alcohol per 100 milliliters.  The validity of this evidence was uncontested and is sufficient to prove that Defendant's blood alcohol concentration was 0.08 or more.  The State thus

presented overwhelming evidence that Defendant's blood alcohol concentration was 0.08 or more.

Considering the evidence properly before the jury, there is no reasonable possibility that the jury would have reached a different result had it not heard Jacobs' testimony to Defendant's specific alcohol concentration level relating to the HGN test.

## IV.    Conclusion

Because Barra's toxicology report was properly admitted as the basis of Simms' expert opinion, and because Jacobs' improper testimony was not prejudicial, Defendant received a fair trial free from prejudicial error.

NO ERROR; NO PREJUDICIAL ERROR.

Judges HAMPSON and JACKSON concur.